J. B. STEIN & COMPANY, d/b/a Honey Girl, Inc., Plaintiff-Appellee, *v.* ROBERT SANDBERG *et al.*, Defendants-Appellants.

Second District    No. 80-117

Opinion filed April 7, 1981.

Thomas A. McDonald, Jeffrey J. Asperger, and James T. Ferrini, all of Clausen, Miller, Gorman, Caffrey & Witous, of Chicago, for appellants.

Jay H. Tressler, Robert S. Soderstrom, and James P. DeNardo, all of McKenna, Storer, Rowe, White & Farrug, of Chicago, for appellee.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

This is an interlocutory appeal from the Circuit Court of Du Page County presenting the questions of whether the language of an exculpatory clause in a commercial lease was ambiguous in failing to specify the negligence of the lessor, whether the clause survives the enactment of a statute prohibiting such clauses, and whether there is an implied warranty of habitability upon which an action for negligence resulting in property damage can be maintained. The trial court denied the defendants' motions to dismiss and certified those questions.

The appeal focuses on the complaint instituted by the plaintiff, J.B. Stein & Company, Inc., to recover damages for the destruction of property resulting from a fire which occurred in a building owned by the defendants. On May 6, 1964, plaintiff leased space in the subject building from the then owners for a term of 10 years. The lease provided that the premises were "to be occupied and used by lessee for the sale at retail of womens apparel and accessories." Paragraph 22 of said lease, which was included in a rider incorporated into the lease, provided the lessee with two separate options to "renew or extend" the terms of the lease for successive periods of five years each. Plaintiff was required to submit written notice of its desire to exercise the options to the lessor a year prior to the expiration of the respective preceeding terms. The renewal terms would be based upon the same terms, covenants, and conditions included in the original lease with the exception of a deduction from percentage rentals for improvements clause and the option clauses themselves.

On April 30, 1973, the defendants purchased the subject building and received an assignment of the lease in question. Thereafter, on May 4, 1973, plaintiff exercised its option to renew the term of the lease for five years beginning September 1, 1974. On September 4, 1974, a fire occurred in the subject building resulting in extensive damage to plaintiff's property. Plaintiff's complaint alleged that the electrical wiring system in the subject building overloaded and caused the fire. Three causes of action were alleged: negligence, *res ipsa loquitur*, and breach of implied "warranty of habitation."

Defendants filed a motion to dismiss contending that an exculpatory clause contained within the lease absolved them of any liability for the damage in question. Additionally, they argued that no implied warranty of habitability exists with respect to commercial leases in Illinois. This motion was denied. Defendants renewed said motion immediately prior to trial. Although the court again denied the motion, it certified that the motion raised questions of law as to which there is substantial ground for difference of opinion, thereby placing the matter within the purview of Supreme Court Rule 308 (Ill. Rev. Stat. 1979, ch. 110A, par. 308). Pursuant to Rule 308, the court identified the following questions: (1) whether

under Illinois law, the exculpatory clause contained in the commercial lease in question should relieve the lessor of his own liability, based upon negligence, breach of warranties, or otherwise; (2) whether "An Act making void and unenforceable certain agreements exempting lessors from liability* * *" (Ill. Rev. Stat. 1973, ch. 80, par. 91) rendered void an exculpatory clause in the subject lease originally executed in 1964 before the effective date of the statute, where said lease was renewed by an exercise of lessee's option in 1973, after the effective date of the statute; and (3) whether a commercial tenant has a cause of action in Illinois for breach of implied warranties of habitability and/or fitness, when the leased premises burned due to purportedly unsafe conditions in the multiunit commercial building.

## THE EXCULPATORY CLAUSE

The exculpatory clause in the subject lease provides in pertinent part:
"6. Waiver of Claims

Lessor and lessor's agents and servants shall not be liable, and lessee waives all claims, for damage to person or property sustained by lessee or any occupant of the building or premises resulting from the building or premises or any part of either or any equipment or appurtenance becoming out of repair, or resulting from any accident in or about the building, or resulting directly or indirectly from any act or negligence of any tenant or occupant of the building or of any other person, including lessors, agents, and servants. This section 6 shall apply especially, but not exclusively, * * * to damage caused by refrigerators, sprinkling devices, air-conditioning apparatus, water, snow, frost, steam, * * * and shall apply equally whether any such damage results from the act or neglect of the lessor or of other tenants, occupants, or servants in the building or of any other person, and whether such damage because or results from anything or circumstance above mentioned or referred to, or circumstance whether of a like nature or of a wholly different nature * * *."

In denying defendants' motion to dismiss, the trial court concluded that the exculpatory clause contained an ambiguity with respect to lessors' negligence and should, therefore, be strictly construed against the lessor. The court determined that the first sentence of the clause relieved the lessor of liability for damage to person or property resulting from (1) the building or premises or any part of either or any equipment or appurtenance becoming out of repair or, (2) any act or neglect of any tenant or occupant of the building or of any other person, including lessors' agents and servants. The court did not believe that this portion of the clause exculpated the lessor from his own acts of negligence.

■■ We conclude the exculpatory clause in the instant case exempted the landlord from liability for any part of the building equipment or appurtenance which became out of repair or for any acts of the lessors' servants or other persons. Damage resulting from a faulty electrical system clearly would be included within this language. Furthermore, any possible ambiguity existing in the first sentence of the clause with respect to negligent acts of the lessor was resolved in the second sentence of the clause which specifically included damage resulting from the act or neglect of the lessor when it used the words "or of any other person." It is well established that where there is any doubt or uncertainty as to the meaning of the language used in a lease it should be construed most strongly against the lessor and in favor of the lessee. (*South Parkway Building Corp. v. South Center Department Store, Inc.* (1958), 19 Ill. App. 2d 14, 153 N.E.2d 291; *Moss v. Hunding* (1960), 27 Ill. App. 2d 189, 169 N.E.2d 396.) Exculpatory clauses are to be strictly construed against the party they benefit. (*In re Estate of Corbin* (1969), 105 Ill. App. 2d 120, 245 N.E.2d 117.) It is equally true, however, that this rule does not apply where the language used is plain and certain and contains no ambiguities. *Book Production Industries, Inc. v. Blue Star Auto Stores, Inc.* (1961), 33 Ill. App. 2d 22, 178 N.E.2d 881.

■■ In *Book Production* this court construed an exculpatory clause remarkably similar to the one in the case at bar as containing no ambiguities with respect to the inclusion of the negligent actions of the lessor. Although the exculpatory clause in the case did not anywhere include the phrase "act or neglect of the lessor," the court specifically construed the entire clause so as to include that conduct. Moreover, while the water damage in *Book Production* was specifically included in the exculpatory clause, it does not appear that such specificity is required. (See, *e.g.*, *Strauch v. Charles Apartments Co.* (1971), 1 Ill. App. 3d 57, 273 N.E.2d 19.) We conclude that the exculpatory clause in the instant case was not ambiguous and, if in force, would exculpate the lessor for his negligence as well as that of his agents and servants for any equipment becoming out of repair.

### VALIDITY OF THE EXCULPATORY CLAUSE

Prior to the enactment of section 1 of "An Act making void and unenforceable certain agreements exempting lessors from liability * * *" (Ill. Rev. Stat. 1973, ch. 80, par. 91), Illinois courts had consistently determined that an exculpatory clause which specifically or generally provided that the lessor shall not be liable for damages or injuries to the lessee or his property from all or certain causes shall not be against public policy but would be valid and enforceable. (*Jackson v. First National Bank* (1953), 415 Ill. 453, 114 N.E.2d 721; *O'Callahan v. Waller & Beckwith Realty Co.*

(1959), 15 Ill. 2d 436, 155 N.E.2d 545.) The exculpatory clause at issue in *Jackson* was contained in a business lease. The court concluded that there is nothing in the lessor-lessee relationship which, in and of itself, militates against the validity of such agreements. Furthermore, the court determined that there was nothing in the record to suggest that the parties were not dealing at arm's length and upon equal footing.

Defendants contend that section 1 would not operate to void the exculpatory clause at issue because the original lease was executed prior to the effective date of the statute. Section 1 provides:

> "Every covenant, agreement or understanding in or in connection with or collateral to any lease of real property, exempting the lessor from liability for damages or injuries to person or property caused by or resulting from the negligence of the lessor, his agents, servants or employees, in the operation or maintenance of the demised premises or the real property containing the demised premises shall be deemed to be void as against public policy and wholly unenforceable." (Ill. Rev. Stat. 1973, ch. 80, par. 91.)

This statute, effective as of September 17, 1971, has been deemed to be prospective in its application. (*Bruno v. Gabhauer* (1972), 9 Ill. App. 3d 345, 292 N.E.2d 238.) Therefore, if plaintiff's option to extend or renew is considered to be a continuation of the original lease, then this statute would not be applicable and the exculpatory clause would bar the action for negligence. *Zion Industries, Inc. v. Loy* (1977), 46 Ill. App. 3d 902, 361 N.E.2d 605.

It would appear that the resolution of this issue should focus on the construction of the option clause as either an option "to renew" or "to extend" the lease. While courts have often blurred the distinction between a renewal and an extension they have attempted a viable distinction based upon the intention of the parties. In *Vincent v. Laurent* (1911), 165 Ill. App. 397, the lease provided that the lessee "shall have the refusal to release said premises for five years more at the same rate at the expiration of this lease" and "that at the expiration of the term of the lease he [lessee] would yield up to the party of the first part [lessor] without further notice." The court concluded, construing all the language used in the lease, that it was evident that the parties contemplated a new lease, or a renewal as opposed to an extension, at the expiration of the term of five years. *Vincent*, while being recognized as correct, was distinguished by this court in *Smith v. Bradley* (1949), 336 Ill. App. 272, 83 N.E.2d 365, where the parties executed a supplemental contract for attachment to the original lease and designated it an "extension agreement." The court concluded that while the relation between the parties is to be determined from the terms of the contract rather than the name they have given that

relation, some weight must be given to their designation thereof. In *Butz v. Butz* (1973), 13 Ill. App. 3d 341, 299 N.E.2d 782, the court interpreted a farm lease granting the lessee an "option to renew said lease for an additional 10-year term upon the conditions, covenants, and restrictions herein set forth," but there was no language with regard to either the time or manner in which the option to renew was to be exercised. The lease also provided the lessee an option to purchase after the lessor's death by serving notice within two years of the lessor's death upon the lessor's personal representative. The question before the court was whether the lease had been renewed so that the lessee could exercise the purchase option, where no action had been taken by the lessee beyond holding over. While adopting the holding of *Vincent*, the court concluded that where there was no stated time or manner for the exercise of an option, the lessee must give the lessor adequate notice of his intention to exercise the option *both as to renewals and extensions* or his holding over will merely constitute a tenancy from year to year. We agree with the policy of *Butz* and determine that the requirement of the option that the lessee is required to give notice should not be the basis for distinguishing between a renewal and an extension.

An option to renew a lease is not a present demise of the additional term but is a covenant to grant an additional term upon the condition specified. (*Hindu Incense Mfg. Co. v. MacKenzie* (1949), 403 Ill. 390, 86 N.E.2d 214; *Fuchs v. Peterson* (1925), 315 Ill. 370, 146 N.E. 556.) In contrast, a covenant to extend is not a mere right to an additional enjoyment of the term, but is a present demise for a future term. (See Bennett, Law of Landlord and Tenant §103 (1939).) The fact that a fine line exists as to the intention of the parties when the words "renewal" or "extension" is demonstrated by the following language from the Restatement (Second) of Property:

> "c. *Option to renew or extend a lease.*
>
> An option in the tenant to renew or extend a lease may be interpreted as an option to acquire a lease and, if so, a new lease must be provided by the landlord in accordance with the terms of such option, if the option is valid under the contract provisions of the controlling Statute of Frauds. An option in the tenant to renew or extend a lease may alternatively be interpreted as a lease that is originally created for a period that includes the renewal or extension period with an option in the tenant to terminate at the end of the first period of the lease." Restatement (Second) of Property, Explanatory Notes §2.5, comment c, at 93 (1977).

We conclude that where (1) the original option used "renew or extend" in describing the right being granted the lessee; (2) the additional periods are referred to as "first renewal" and "second renewal"; (3) the

lessee is required to give notice of his intention to exercise the option before specific dates which are prior to the termination of the lease; (4) the renewals are upon "the same terms, covenants and conditions" as in the original lease (except as to a specific clause granting lessee the right to apply percentage rentals for sums expended for alterations, improvements and revisions and the option clause itself); (5) the lessee complies with the option clause by written notice exercising "our option to *extend* the lease for an additional five years" (emphasis added); and (6) where there is no evidence suggested that would support an allegation that the lessee was doing anything other than extending the original lease, that the language and actions of the parties evince an intention that the option periods should be construed as extensions of the lease and not a new letting or renewal. An extension is distinguished from a renewal in that the former is treated as a present demise for the full term to which it may be extended, while a renewal requires that a new lease be executed. See 32 Am. Jur. *Landlord & Tenant* §956 (1941); 50 Am. Jur. 2d *Landlord & Tenant* §§1156, 1180 (1970).

■■ The effect of the exercise of the option by the lessee on May 4, 1973, was to extend and continue the lease originally entered into in 1964. It was that lease, including the exculpatory clause, that was in effect on September 4, 1974, the date of the occurrence. Since section 1 became effective after the lease had been entered into, the validity of the exculpatory clause was not invalidated by the statute. (*Bruno v. Gabhauer* (1972), 9 Ill. App. 3d 345, 292 N.E.2d 238; *Zion Industries, Inc.*) The exculpatory clause is valid.


## IMPLIED WARRANTY OF HABITABILITY

■■ Plaintiff contends that the implied warranty of habitability established in *Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351, 280 N.E.2d 208, should be extended to commercial leases as to enable plaintiff to bring an action in damages based on said warranty. *Beese v. National Bank* (1980), 82 Ill. App. 3d 932, 403 N.E.2d 595, recently held that while the theory of implied warranty of habitability may be properly used as an affirmative defense by the tenant to justify the withholding of rent or even as the basis for a complaint for the recovery of rent, the economic and social consequences involved in expanding the warranty to actions for personal injury damages are such that it would be inappropriate to hold that *Jack Spring, Inc.* permits such an action. (See also *Dapkunas v. Cagle* (1976), 42 Ill. App. 3d 644, 356 N.E.2d 575.) Additionally, Illinois courts in four separate opinions have explicitly determined, without substantial discussion, that the implied warranty of habitability established in *Jack Spring, Inc.* would not extend to commercial leases. (*Elizondo v. Perez* (1976), 42 Ill. App. 3d 313, 356 N.E.2d 112; *Clark Oil Refining Corp. v. Banks* (1975),

34 Ill. App. 3d 67, 339 N.E.2d 283; *Ing v. Levy* (1975), 26 Ill. App. 3d 889, 326 N.E.2d 51; *Germania Federal Savings & Loan Association v. Jacoby* (1974), 23 Ill. App. 3d 145, 318 N.E.2d 734.) The thrust of these decisions is essentially that our supreme court in *Jack Spring, Inc.* expressly limited its decision to multiple-dwelling units. Therefore we are unwilling to extend the *Jack Spring, Inc.* decision to commercial leases and actions for damages to property on the theory of implied warranty of habitability.

In conclusion we determine that the exculpatory clause relieves the lessor of the obligation for damages for his negligence; that it was neither ambiguous nor was it invalidated by reason of section 1; and that the plaintiff cannot recover for damages to property under the theory of implied warranty of habitability expressed in *Jack Spring, Inc.* The judgment of the Circuit Court of Du Page County is reversed.

Reversed.

SEIDENFELD, P. J., and VAN DEUSEN, J., concur.