BILLY McMINN, Plaintiff, v. LEE J. CAVANAUGH, Indiv. and d/b/a Tri-C Certified Service Center, *et al.,* Defendants (Atlantic Richfield Company, Counterplaintiff-Appellant; Lee J. Cavanaugh, Indiv. and as a Member of a Partnership with Mitchell Cavanaugh, Counterdefendants-Appellees).

First District (4th Division)   No. 88—0377

Opinion filed December 8, 1988.—Rehearing denied January 13, 1989.

Ross & Hardies, of Chicago (Barbara Ross and Daniel P. Hogan, of counsel), for appellant.

McKenna, Storer, Rowe, White & Farrug, of Chicago (James P. DeNardo, Randall G. Talan, and Christine L. Olson, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Counterplaintiff, the Atlantic Richfield Company (ARCO), brought a counterclaim in the circuit court of Cook County against counterdefendants, Lee J. Cavanaugh, individually and his partnership with Mitchell Cavanaugh (Cavanaugh). ARCO owned an automobile service station and Cavanaugh was its tenant under a lease. Both ARCO and Cavanaugh were named codefendants in a personal injury action. In its counterclaim, ARCO sought indemnity from Cavanaugh based on provisions in the lease. The trial court dismissed ARCO's counterclaim. ARCO appeals, assigning error to the dismissal.

We affirm the order of the trial court.

BACKGROUND

■ The trial court dismissed ARCO's counterclaim pursuant to section 2—619(a)(9) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(9)). A motion to dismiss, including one under section 2—619(a)(9), admits all well-pled facts. *Austin View Civic Association v. City of Palos Heights* (1980), 85 Ill. App. 3d 89, 93, 405 N.E.2d 1256, 1261.

ARCO alleged in its counterclaim that on August 25, 1982, it and Cavanaugh entered into a lease agreement for an automobile service station. Cavanaugh became the tenant-operator of the service station, located at 3 North Wilke Road, in Arlington Heights, Illinois. The lease term began January 1, 1983, and ended January 1, 1986. Paragraph 15a of the lease provided in pertinent part:

"15a Indemnity. Lessee [Cavanaugh] covenants and agrees to indemnity, hold harmless and defend Lessor [ARCO] from and against all claims, losses and damages for personal injury or death or damage to property occurring on the Premises, arising out of Lessee's use or occupancy of the Premises, or arising out of Lessee's operation of the service station business or arising out of Lessee's use, custody or operation of Loaned Equip-

ment or any other equipment on the Premises, excepting any damage or loss caused solely by the negligence of Lessor or solely by Lessor's failure to perform its obligations hereunder."

Additionally, in paragraph 15b of the lease, Cavanaugh agreed to procure and maintain insurance containing a contractual liability endorsement insuring his obligation to indemnify ARCO pursuant to paragraph 15a.

On August 3, 1984, plaintiff, Billy McMinn, suffered injuries when he fell on concrete pavement at the service station. McMinn brought the underlying personal injury action against ARCO and Cavanaugh. In its answer, ARCO denied McMinn's allegations, set up an affirmative defense, and brought a counterclaim against Cavanaugh. In its counterclaim, ARCO sought indemnity from Cavanaugh based on paragraph 15a of the lease. Cavanaugh, however, subsequently filed a counterclaim against ARCO, seeking contribution.

ARCO filed a section 2—619(a)(9) motion to dismiss Cavanaugh's claim seeking contribution, relying on the indemnity provision in the lease. Cavanaugh subsequently filed a section 2—619(a)(9) motion to dismiss ARCO's counterclaim seeking indemnity. Cavanaugh argued that the lease's indemnity provision was void and unenforceable, relying on Public Act No. 77—1569, entitled "AN ACT making void and unenforceable certain agreements exempting lessors from liability ***" (the Act) (Ill. Rev. Stat. 1987, ch. 80, par. 91).

Granting Cavanaugh's motion, the trial court dismissed ARCO's counterclaim seeking indemnity from Cavanaugh. The trial court ruled that the lease's indemnity provision fell within the scope of the Act, rendering the indemnity provision invalid. ARCO appeals.

OPINION

The trial court ruled that the Act nullified and made unenforceable paragraph 15a of the lease between ARCO and Cavanaugh. The Act provides as follows:

> "Every covenant, agreement or understanding in or in connection with or collateral to any lease of real property, exempting the lessor from liability for damages for injuries to person or property caused by or resulting from the negligence of the lessor *** in the operation or maintenance of the demised premises or the real property containing the demised premises shall be deemed to be void as against public policy and wholly unenforceable." Ill. Rev. Stat. 1987, ch. 80, par. 91.

ARCO argued before the trial court that paragraph 15a of the lease was an indemnity agreement and not an agreement for exculpa-

tion. ARCO reasoned that paragraph 15a fell outside of the Act and, therefore, was enforceable. The record shows that the trial court rejected this argument. The court reasoned that regardless of how the parties labelled paragraph 15a, its effect was the same as an exculpatory agreement. As a result, the court concluded that the paragraph fell within the scope of the Act, rendering the paragraph unenforceable.

■ We agree with the reasoning of the trial court. At common law, a lease exculpatory clause that exempted a landlord from liability for injuries to others, including a tenant and the tenant's property, was valid and enforceable. (*J.B. Stein & Co. v. Sandberg* (1981), 95 Ill. App. 3d 19, 22-23, 419 N.E.2d 652, 655 (and cases cited therein).) Courts enforced lease exculpatory clauses unless "(1) it would be against the settled public policy of the State to do so, or (2) there is something in the social relationship of the parties militating against upholding the agreement." (*Jackson v. First National Bank* (1953), 415 Ill. 453, 460, 114 N.E.2d 721, 725.) Since the Act forbids the inclusion of such clauses in leases, it is in derogation of the common law.

Courts strictly construe statutes in derogation of the common law, since the common law is not to be deemed abrogated by statute unless it appears clearly that such was the legislative intent. Statutes in derogation of the common law cannot be construed as changing the common law beyond what is expressed by the words of the statute or is necessarily implied from what is expressed. This principle includes statutory innovations in derogation of the common law; courts will not presume that the legislature intended an innovation further than that which the statute specified or clearly implied. *Lites v. Jackson* (1979), 70 Ill. App. 3d 374, 375-76, 387 N.E.2d 1118, 1119 (and authorities cited therein).

The above principle applies even to remedial statutes in derogation of the common law. The remedial aspect of such a statute does not warrant construing the statute liberally from the standpoint of exclusion and inclusion of persons. Courts reason that they cannot read into such a statute something that is not within the clearly expressed intent of the legislature. Therefore, where a statute is remedial, yet in derogation of the common law, courts will construe the statute strictly in determining what persons come within the statute. *Lites,* 70 Ill. App. 3d at 376, 387 N.E.2d at 1120, quoting *Cedar Park Cemetery Association, Inc. v. Cooper* (1951), 408 Ill. 79, 82-83, 96 N.E.2d 482, 484.

■ ARCO correctly argues that a distinction exists between ex-

culpatory contracts and indemnity contracts. Exculpation excuses one party from liability for otherwise valid claims that may be made against him by the other. Indemnification, on the other hand, does not eliminate an otherwise valid claim. Indemnification merely shifts the liability and responsibility for satisfaction of the plaintiff's claim from one party to another. (R. Guild, *Indemnification & Exculpation,* 45 Chi. B. Rec. 447, 448 (1964).) "Unlike an exculpatory clause or contract, an indemnity agreement does not deny compensation to the party injured, but instead determines who will bear the loss." (J. Dooley, Modern Tort Law §20.04 (1988).) Exculpation asks whether compensation will be paid. Indemnification, however, asks not whether compensation will be paid, but, rather, which defendant shall pay. (*Gatley v. United Parcel Service, Inc.* (D. Maine 1987), 662 F. Supp. 200, 202.) The Act expressly forbids lease exculpatory agreements—not indemnity agreements. ("Every covenant *** exempting the lessor from liability *** shall be deemed to be *** wholly unenforceable.") Ill. Rev. Stat. 1987, ch. 80, par. 91.

■ Despite the distinction between exculpation and indemnification, an indemnity clause in a lease has the same effect as a lease exculpatory clause: the landlord does not pay. We cannot believe that the legislature, while prohibiting landlords from avoiding paying claims through exculpation, intended to allow landlords to avoid paying claims through indemnity. We hold that the Act, by clear and necessary implication, forbids indemnity agreements in leases as well as exculpatory agreements. Accordingly, the Act nullified and rendered unenforceable paragraph 15a of the lease between ARCO and Cavanaugh. Consequently, we uphold the trial court's dismissal of ARCO's counterclaim seeking indemnity from Cavanaugh.

For the foregoing reasons, the order of the circuit court of Cook County, which dismissed ARCO's counterclaim against Cavanaugh, is affirmed.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.