**AURORA NATIONAL BANK, as Trustee of Trust No. 53, and Margaret Wollwert and Hazel Wollwert, as Beneficiaries of Trust No. 53, Plaintiffs,**

v.

**TRI STAR MARKETING, INC., Marathon Petroleum Company and Lincoln Land Oil Company, Defendants.**

No. 96 C 4175.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 7, 1997.

Stephen Douglas Sharp, Chicago, IL, Ann T. Parisi, Maureen Martin, Johnine J. Brown, BrownMartin, P.C., Chicago, IL, for Plaintiffs.

Richard Lewis Reinish, Keck, Mahin & Cate, Chicago, IL, Roy G. Davis, David G. Lubben, Keck, Mahin & Cate, Peoria, IL, for Tri Star Marketing, Inc., Marathon Petroleum Co.

Edward V. Walsh, III, Sachnoff & Weaver, Ltd., Chicago, IL, for Lincoln Land Oil Co.

## MEMORANDUM AND ORDER

MORAN, Senior District Judge.

A property in Aurora, Illinois, was the site of a gasoline service station from 1959 until June 30, 1992. Plaintiffs are the land trustee owner of the site and the beneficial owners. The defendants are some of the various concerns that operated the station at one time or another during its many years of operation. According to the complaint, when Tri Star Marketing, Inc. (Tri Star), the last lessee, vacated the premises, it left behind significant contamination. It also, claims plaintiffs, did not pay all the rent that was due for the last year.

One would think that remediation of a former service station would be a rather common occurrence that would follow a predictable route to resolution. Not so, if this case is any example. The parties fought one round in state court. That round ended without any final determination, although the parties disagree why it so concluded. Plaintiffs then brought this action in 11 counts spread over 34 pages. The defendants Tri Star and Marathon Petroleum Company (Marathon), in one motion, and Lincoln Land Oil Company (Lincoln), in another, move to dismiss on various grounds. Plaintiffs oppose the motions and also seek Rule 11 sanctions against Tri Star and Marathon.

■ We begin with the Tri Star and Marathon motion to dismiss. They contend that there is no federal jurisdiction for counts I through IV because Illinois has established a leaking underground storage tank (LUST) program pursuant to the Resource Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C. § 6901 *et seq.*, which displaces federal law. They rely upon plaintiffs' allegations for that assertion. Not so, respond plaintiffs. Illinois has a LUST program but it is not an authorized program that would trigger reverse preemption. Rather, plaintiffs contend, Illinois operates its LUST program under a cooperative agreement with U.S. EPA. That means, according to plaintiffs, that the federal government has not totally

accepted the Illinois program because its requirements are less stringent than federal law but permits it to operate subject to primary federal jurisdiction to seek federal enforcement if EPA chooses. It relies on *Dydio v. Hesston Corp.*, 887 F.Supp. 1037 (N.D.Ill.1995). Why then, responds defendants, do plaintiffs allege that they are relying upon state law, since the primacy of state law customarily displaces federal law—particularly since the design of RCRA implies that Congress intended those burdened to be subject to one set of regulations, either federal or state, not both? *See G.J. Leasing Co., Inc. v. Union Elec. Co.*, 825 F.Supp. 1363, 1381 (S.D.Ill.1993), *vacated in part on denial of reconsideration*, 839 F.Supp. 21 (S.D.Ill.1993). In reply, plaintiffs rely again upon *Dydio,* and refer to counts II and IV as resting on state law. We think that is correct, in a sense. After all, the Illinois program is an Illinois creation. We believe, however, that 42 U.S.C. § 6991b(h)(7)(A) in effect adopts that Illinois creation, at least to the extent it is consistent with federal law, and permits Illinois to enforce its plan as surrogate federal law. We think that is what Judge Castillo had in mind in *Dydio.* Accordingly, we deny the motion to dismiss counts I through IV on grounds of lack of jurisdiction.

■ Tri Star, Marathon and Lincoln also move to dismiss counts I through VI as multifarious, citing *Brignoli v. Balch Hardy and Scheinman,* 645 F.Supp. 1201 (S.D.N.Y. 1986). Plaintiffs respond that proper pleading requires that the bases for different claims for relief be set forth in separate counts and, besides, the motion should at most ask for dismissal of three counts, not six. Here the bases for alternate relief are the same for both. There should be three counts, not six. Rather than cutting down more trees and expending more lawyer time, we think a repleading for such a minor transgression is unwarranted. We suggest that defendants adopt their prior answers as their answer to all the allegations of the three paired counts.

■ As the above should have foreshadowed, we deny the Rule 11 motion. The fact that we agree more with plaintiffs than with defendants (although we do not wholly agree) does not mean defendants have violated Rule 11. Indeed, the statutory pattern in this area is so complex that courts have great difficulty in discerning their meaning, their interrelationships, and their application, and they often disagree. On the multifarious issue, we agree more with defendants (but not wholly) than we do with plaintiffs.

■ Before discussing Lincoln's motion to dismiss we describe how Lincoln, according to the complaint, was involved with the property. Lincoln was formerly known as Chronister Oil Company, and we will hereafter refer to that defendant as Chronister. Chronister became a sublessee on November 1, 1979. It temporarily ceased operating the existing service station while it relocated the pump islands, removed the existing fuel dispensers and relocated some of them, installed additional fuel dispensers, relocated the existing canopy, and installed new piping from the existing underground storage tanks (USTs) to the relocated and new fuel dispensers. The old piping was left in the ground. Chronister operated the station until October 1, 1981, when it assigned its rights and duties to Marathon. At that time there were four USTs on the property. Three of triem, all gasoline, were replaced in 1989, leaving a kerosene UST. The replacement USTs and the kerosene UST were removed in 1992. The piping Chronister disconnected remains buried on the property.

We turn then to a consideration of 42 U.S.C. § 6972(a)(1)(A) and (B), in light of those allegations. That section, in relevant part, provides as follows:

Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf—

(1)(A) against any person ... who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to the chapter; or

(B) against any person ... including any ... past or present owner or operator of a ... storage facility, who has contributed ... to the past ... storage

... of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

Plaintiffs allege in counts I and II that Chronister was the owner and operator of the old USTs October 29, 1979 to October 1, 1981; that it installed new piping; that it left the old piping in the ground; and that it is in violation of standards, regulations, conditions, requirements, prohibitions and riders which have become effective pursuant to 42 U.S.C. §§ 6901 et seq. Accordingly, they seek relief pursuant to § 6972(a)(1)(A). Chronister contends it cannot be liable because any violation was a past violation; it could not be a violator because it left the property before the UST amendment became effective in 1984 (and the regulations became effective in 1988), and it is not a responsible owner or operator. It is not a responsible owner, it contends, because the use of the USTs did not cease before November 8, 1984, and it does not presently own any UST, and it is not a responsible operator because it is not in control of, or have responsibility for, the daily operation of any UST. Plaintiffs argue that Chronister reads the definitions of owners and operators too literally, that obligations to follow proper remediation procedures continue and that, in any event, Chronister is the owner of the buried disconnected piping, which is within the definition of a UST.

We believe plaintiffs carry the reach of § 6972(a)(1)(A) too far. The thrust of RCRA is prospective. *Meghrig v. KFC Western, Inc.*, —— U.S. ——, ——, 116 S.Ct. 1251, 1254, 134 L.Ed.2d 121 (1996). We have no doubt that Chronister would have various obligations if the use of the USTs had ceased when it left the property in 1981 or if it presently owned the USTs left on the property. *See Dydio v. Hesston Corp., supra.* We are not at all sure, however, that Chronister fits within the statutory definition of owner or operator, *see Buch v. Guettler*, No. 95 C 50292, 1996 WL 377168 (N.D.Ill. July 3, 1996), although we note that a literal interpretation of "owner" would absolve owners of post-November 8, 1984 USTs who no longer owned the property at the time of the suit.

Perhaps, though, Congress wished to assign responsibility to someone, but not to all, to follow appropriate procedures in circumstances that do not, even arguably, present an imminent and substantial endangerment to health or the environment. We do not decide that, however, because Chronister ceased operations before the UST amendments became effective and the USTs it used have long since been removed. *Pennsylvania Real Estate Investment Trust v. SPS Technologies. Inc.*, No. 94 C 3154, 1995 WL 687003 (E.D.Pa. Nov. 20, 1995). It does not help Chronister that some piping may be left in the ground. It has not been connected to a UST since 1979. We dismiss counts I and II against Lincoln.

Section 6972(a)(1)(B), however, specifically targets all past or present owners or operators. It reaches substantial present harms which rise to the level of possibly presenting imminent and substantial endangerment to health or the environment. *Meghrig v. KFC Western, Inc., supra*, at ——, 116 S.Ct. at 1255. And we believe plaintiffs have sufficiently so alleged, even if, perhaps, not as artistically as they might have done. They have alleged far more than a failure to meet soil cleanup objectives: a "gas leak incident" (¶ 55); "contamination," "stained soil" and "vapor odors" (¶ 56); "contamination," "a very strong gasoline odor," "vapors indicating extensive contamination" (¶ 59); and a "significant" release of petroleum (¶ 61). They rely upon § 6972(a)(1)(B), which requires proof of a harm that "may present an imminent and substantial endangerment to health or the environment." And we understand the thrust of plaintiffs' contentions to be that Chronister was the owner and operator of USTs and that it contributed to the past storage of a hazardous waste that may present the claimed endangerment. The motion to dismiss counts V and VI is denied.

We are still left with a number of motions not yet fully briefed—and a conviction that there must be a better way to resolve the problems arising at one service station site.

This matter is set for a status at 9:45 a.m. on January 10, 1997.