**Hortense SINGER, Plaintiff,**

v.

**BULK PETROLEUM CORP., Defendant.**

**No. 97 C 7789.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 11, 1998.

---

Robin Reed Lunn, Michael James Hughes, Neal, Gerber & Eisenberg, Chicago, IL, Kenneth A. Bohnert, Conliffe, Sandmann & Sullivan, Louisville, KY, for Plaintiff.

Frank M. Grenard, Jones, Ware & Grenard, Olympia Fields, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendant Bulk Petroleum Corporation's motion to dismiss plaintiff Hortense Singer's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the court denies in part and grants in part defendant's motion to dismiss.

### I. BACKGROUND

The complaint alleges the following facts which, for the purpose of ruling on this motion, are taken as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). Plaintiff Hortense Singer ("Singer") is the successor in interest to the JLS Corporation ("JLS"). Singer owns the real property located at the northwest corner of the intersection of Route 56 and Route 59 in Warrenville, DuPage County, Illinois ("the subject property").

On March 1, 1963, JLS Corporation leased the subject property to defendant Bulk Petroleum Corporation ("Bulk").[1] The lease was for "the purpose of the sale and storage thereon of gasoline, petroleum and petroleum products, and at Lessee's option for the conduct of any other lawful business thereon." Pursuant to this lease, Bulk leased a fully equipped gas station facility, which included three underground storage tanks ("USTs"). The term of the lease was for a period of fifteen years, commencing on March 1, 1963 and ending on February 28, 1978, with a five year option to extend.

Beginning in November of 1967, with JLS' consent, Bulk began to demolish and remove the existing gas station facility and began to construct a new gas station facility. This included constructing three new USTs and taking the three old USTs out of service. Unbeknownst to JLS, Bulk did not remove the three old USTs after taking them out of service but, rather, simply covered over them.

At the end of the fifteen year lease, Bulk exercised its option and extended the lease term to February 28, 1983. Near the end of the extended term, Bulk advised JLS that it would terminate the lease effective February 28, 1983 and that the equipment in place at the gas station "included two 8,000 gallon

1. At the time of the lease, JLS ("the lessor") was named Bulk Petroleum Corporation and defendant was a corporation named William J. Gerwe Corporation. Effective upon the commencement of the term of the lease, the lessor corporation changed its name to JLS Corporation and defendant changed its name to Bulk Petroleum Corporation. For the sake of simplicity, the court will call the lessor "JLS" and defendant "Bulk."

underground storage tanks and one 10,000 gallon storage tank."

In June of 1994, the three registered USTs, the USTs installed by Bulk, were taken out of service. Investigation of the three USTs at the site revealed that each of the USTs may have been leaking. These three registered USTs were removed on January 19, 1995. The Illinois Office of the State Fire Marshal declared the site a "major" release incident due to contamination.

During the removal of the three registered USTs, the previously unknown USTs ("orphan USTs") were discovered. The orphan USTs were removed in January and June of 1995. The orphan USTs were the USTs in use at the beginning of Bulk's lease term, which were subsequently taken out of service and covered up by Bulk. Investigation of the three orphan USTs revealed that each of those USTs might have been leaking.

As a result of Bulk's failure to remove the USTs, Singer has incurred over $75,000 in costs in investigating and removing the USTs. Further, leaked petroleum products have migrated through the soil and petroleum contamination remains in the soil and groundwater near the site, which requires clean up and/or remediation.

On November 6, 1997, Singer filed this five-count complaint against Bulk, asserting claims for violations of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901–6992k, and the Illinois Environmental Protection Act ("IEPA"), 415 ILL. COMP.STAT. § 5/21(e), negligence, contractual indemnity, and restitution. The court has subject matter jurisdiction over Singer's claims pursuant to 28 U.S.C. §§ 1331 and 1367 and 42 U.S.C. § 6972(a).

This matter is currently before the court on Bulk's motion to dismiss Singer's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Bulk makes several arguments as to why Singer's complaint should be dismissed, each of which the court addresses below.

## II. DISCUSSION

### A. Standard of Review

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Cromley v. Board of Educ. of Lockport,* 699 F.Supp. 1283, 1285 (N.D.Ill.1988). If, when viewed in the light most favorable to the plaintiff, the complaint fails to state a claim upon which relief can be granted, the court must dismiss the complaint. *See* FED. R.CIV.P. 12(b)(6); *Gomez v. Illinois State Board of Educ.,* 811 F.2d 1030, 1039 (7th Cir.1987). However, the court may dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### B. Count I—Singer's claim under the RCRA

Count I is Singer's claim against Bulk for violations of section 6972(a)(1)(B) of the RCRA. Section 6972(a)(1)(B) permits a private party to bring suit against any person, including any past or present owner or operator of a storage facility, "who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C.A. § 6972(a)(1)(B). Subsection (a)(1)(B) authorizes suits against all past or present owners or operators. *See Aurora Nat'l Bank v. Tri Star Marketing, Inc.,* 955 F.Supp. 894, 897 (N.D.Ill.1997); *Buch v. Guettler,* No. 95 C 50292, 1996 WL 377168, at *3 n. 3 (N.D.Ill. July 3, 1996). Singer's complaint alleges that Bulk, as a lessee, was a past operator of the USTs. Accordingly, subsection (a)(1)(B) permits Singer to bring suit against Bulk as a past operator.

Bulk, however, argues that Count I fails to state a claim for two reasons. Bulk's first argument is that the complaint fails to allege that Bulk is either an "owner" or an "operator" as defined by the RCRA. Bulk's second argument is that the complaint fails to allege sufficiently the existence of a "substantial

and imminent endangerment." The court addresses each of Bulk's arguments in turn.

Bulk first argues that Singer's RCRA claim should be dismissed because the complaint fails to allege that Bulk was either an "owner" or an "operator" as defined by section 6991 of the RCRA. Singer contends that Bulk's argument is misplaced because the definitions provided in section 6991 apply only to the subchapter IX of the RCRA, which concerns the regulation of USTs and is comprised of sections 6991–6991i of the RCRA, and do not apply to the subchapter VII, which is the subchapter under which Singer's claim is brought.

Bulk is correct that section 6991(4) of the RCRA defines the term "operator" as "any person in control of, or having responsibility for, the daily operation of the underground storage tank." 42 U.S.C.A. § 6991(4). Bulk is also correct that some courts have interpreted that definition to include only current operators and not past operators. *See Buch,* 1996 WL 377168, at *3–4. However, section 6991 specifically provides that the definitions are for the purposes of Subchapter IX, 42 U.S.C.A. §§ 6991–6991i. Thus, the definitions provided in section 6991(4) are inapplicable to Singer's claim under section 6972(a)(1)(B).

■ Bulk relies on *Buch v. Guettler* in support of its argument that it does not qualify as an "operator" under the RCRA. *Buch,* however, does not support Bulk's argument. In *Buch,* the court was addressing whether the plaintiff could state a subsection (a)(1)(A) claim against the defendants as past operators of several USTs. The *Buch* court found that the plaintiff could not because subsection (a)(1)(A) provides for suits only against present, not past, operators. However, the *Buch* court specifically stated that unlike subsection (a)(1)(A), subsection (a)(1)(B) "provide[s] for suits against *past* operators who have contributed to the disposal of solid or hazardous waste." *Buch,* 1996 WL 377168, at *3 n.3. Thus, *Buch* actually supports Singer's argument that she can bring a claim against Bulk under subsection (a)(1)(B) because Bulk is a past operator of the USTs. Accordingly, the court finds that Singer may bring a subsection (a)(1)(B) claim against Bulk as a past operator of the USTs.

Bulk's second argument is that the complaint fails to allege sufficiently the existence of a "substantial and imminent endangerment." Specifically, Bulk alleges that Singer has not sufficiently alleged "imminent and substantial endangerment" in her complaint because she "has *not* alleged 'far more than a failure to meet soil cleanup objectives.'" (Def.'s Br. at 3 (quoting *Aurora,* 955 F.Supp. at 897).)

■ The court rejects Bulk's argument and finds that Singer's complaint does sufficiently allege an "imminent and substantial endangerment to health or the environment." The complaint first alleges that "the conditions caused by the leaking ... [USTs] at the site may present an imminent and substantial endangerment to health or the environment." The complaint also specifically alleges that petroleum products have migrated through the soil, that petroleum contamination remains in the soil and groundwater near the site, and that such contamination requires a response, either clean up and/or remediation. Such allegations are sufficient to plead that an "imminent and substantial endangerment" exists.

In sum, the court rejects Bulk's two arguments as to why Count I of Singer's complaint should be dismissed. Section 6972(a)(1)(B) authorizes Singer to bring an RCRA claim against Bulk as a past operator of the USTs. Further, Singer has sufficiently alleged that an "imminent and substantial danger to health or the environment" exists. Accordingly, Bulk's motion to dismiss Count I of Singer's complaint is denied.

### C. *Count II—Singer's negligence claim*

Count II is Singer's claim against Bulk for negligence. Bulk argues that Count II must be dismissed because (1) the economic loss doctrine bars any relief which may be available to Singer; (2) Singer cannot establish that Bulk owed her a duty or that any act or omission on Bulk's part was the proximate cause of any injury; and (3) Singer's negligence claim is barred by the statute of limitations.

■ The court first addresses Bulk's argument that Singer's negligence claim is barred by the economic loss doctrine.[2] In Illinois, purely economic losses are not recoverable in tort actions except (1) where the plaintiff has sustained personal injury or property damage that has resulted from a sudden or dangerous occurrence; (2) where the plaintiff's damages are the proximate result of the defendant's intentional, false misrepresentation; or (3) where the plaintiff's damages are a proximate result of the negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions. *NBD Bank v. Krueger Ringier, Inc.*, 292 Ill.App.3d 691, 226 Ill.Dec. 921, 686 N.E.2d 704, 707 (1997) (citing *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982)). In this case, none of the above exceptions apply; consequently, Singer's negligence claim is barred if it is a claim for economic loss.

■ Economic loss is defined as

damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property ... as well as the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.

*Moorman Mfg. Co.*, 61 Ill.Dec. 746, 435 N.E.2d at 449 (citations omitted). To distinguish tort damages from contract damages (economic losses), the court must analyze (1) the nature of the defect and (2) the manner in which the injury occurred. *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 177 Ill.2d 21, 224 Ill.Dec. 484, 682 N.E.2d 45, 51 (1997).

■ The economic loss doctrine applies to cases which are predicated on real estate transactions. *Krueger Ringier*, 226 Ill.Dec. 921, 686 N.E.2d at 708. As the *Krueger Ringier* court explained:

To recover in tort, there must be a showing of harm above and beyond disappointed expectations. A purchaser's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects. The remedy for economic loss, relating to a purchaser's disappointed expectations due to deterioration, internal breakdown or nonaccidental causes, lies in contract. Thus, the economic loss doctrine bars recovery in tort under such circumstances, regardless of the plaintiff's inability to recover under an action in contract.

*Id.* (internal citations omitted).

In *Krueger Ringier*, the plaintiffs bought a piece of land from the defendant. After the purchase, the plaintiffs learned that the underground soil on the lot was contaminated due to leakage of a petroleum-based substance from USTs. *Id.* at 706. The plaintiffs brought a tort action against the defendant to recover costs that the plaintiff had incurred in removing the USTs and abating the contamination. *Id.* The court held that the plaintiffs' tort claim was barred by the economic loss doctrine. *Id.* at 708. The court explained that the damage to the property was caused by a gradual deterioration, internal breakage, or some other nonaccidental cause and not by a sudden, dangerous event. *Id.* The court also explained that the damages which the plaintiffs sought were expenses they incurred in restoring the property to the condition that they expected when they entered into the transaction. *Id.*

■ Like the plaintiffs in *Krueger Ringier*, Singer has brought this action to recover the costs incurred in restoring the property to the condition that she expected it would be in when the lease term expired. Specifically, Singer has alleged damages in "excess of $75,000 to investigate and remove the leaking underground storage tanks." Also like the damage to the plaintiffs' property in *Krueger Ringier*, the damage to the subject property in this case occurred as the result of a gradual deterioration, leakage over time, or some other cause. There is no allegation that the damage resulted from a sudden, dangerous event. Accordingly, based on the holding of *Krueger Ringier*, the court finds that Singer is attempting to recover economic losses and,

---

**2.** In this case, the parties agree that Illinois law governs Singer's state law claims.

thus, her negligence claim is barred by the economic loss doctrine.

Singer, however, argues that she has alleged damage to "other property," which would mean that she is not trying to recover only economic losses. Singer relies on *Board of Education v. A, C & S, Inc.*, 131 Ill.2d 428, 137 Ill.Dec. 635, 546 N.E.2d 580 (1989), in support of her argument.

In *A, C & S*, the plaintiffs were attempting to recover from defendants the costs for removing asbestos from several school buildings. *Id.* at 583. The defendants were individuals and corporations who were or had been involved at some level of the manufacturing and/or distribution chain of asbestos products. *Id.* The court held that the economic loss doctrine did not bar the plaintiffs' negligence claim because this claim was based on damage to "other property" and, thus, was not a suit to recover purely economic losses. *Id.* at 588. In so holding, the court explained that the nature of the defect and the damage caused by asbestos is unique. *Id.* The court also explained that the asbestos was contained in the materials which were "products separate from the actual structure." *Id.* at 591. Finally, the court specifically warned: "[T]he holding in this case should not be construed as an invitation to bring economic loss contract actions within the sphere of tort law through the use of some fictional property damage." *Id.*

The case at bar is distinguishable from *A, C & S*. *A, C & S* involved asbestos, which the court recognized caused unique defects and damage to the school buildings. This case does not involve asbestos. Further, in *A, C & S*, the action was against the defendants who manufactured the asbestos and the allegation was that it had harmed "other property," namely, the school buildings. In this case, Singer is attempting to recover from her lessee for damage caused to the property which was the subject of the lease. There is no "other property" which was allegedly damaged. *See Weyerhaeuser Co. v.*

*Edward Hines Lumber Co.*, No. 91 C 623, 1991 WL 169385 at *5, 1991 U.S. Dist. LEXIS 11980, at *13 (N.D.Ill. Aug. 27, 1991). Many Northern District of Illinois cases have found the plaintiff's claim is barred by the economic loss doctrine if the plaintiff fails to allege damage to property other than the property which was the subject of the transaction between the plaintiff and the defendant. *Truck Components, Inc. v. Beatrice Co.*, No. 94 C 3228, 1994 WL 520939 *4, 1994 U.S. Dist. LEXIS 13319, at *27 (N.D.Ill. Sept. 19, 1994); *PMC v. Sherwin Williams*, No. 93 C 1379, 1993 WL 259442, 1993 U.S. Dist. LEXIS 9286, at *17 (N.D.Ill. July 6, 1993); *U.S. Steel Supply, Inc. v. Alco Standard Corp.*, No. 89 C 20241, 1990 WL 304252, 1990 U.S. Dist. LEXIS 19176, at *25 (N.D.Ill. May 4, 1990).

In sum, the court finds that Singer is attempting to recover her disappointed commercial expectations. Accordingly, the court finds that the economic loss doctrine bars Singer's negligence claim for compensation of removal and remediation.[3] Thus, defendant's motion to dismiss Count II of Singer's complaint is granted.

**D.** *Count III—Singer's claim under contractual indemnity*

Count III is Singer's claim against Bulk for contractual indemnification for any and all past and future clean-up and removal costs. This claim is based on paragraph 14 of the lease, which reads as follows:

> Lessee shall protect, indemnify, and save the Lessor harmless from and against *any and all liability and expense of any nature* from injuries to persons or property on the leased premises ... or in any manner *growing out of or connected with Lessee's use and occupancy* of the premises or the condition thereof ... during the term of this Lease.

(Compl. ¶ 42). Bulk makes three arguments as to why Singer's claim for contractual indemnity should be dismissed, each of which the court addresses below.

---

3. Because the court finds that economic loss doctrine bars Singer's negligence claim, the court need not address Bulk's arguments that Singer cannot establish that Bulk owed her a

duty or that any act or omission on Bulk's part was the proximate cause of any injury and that Singer's negligence claim is barred by the statute of limitations.

Bulk's first argument is that Singer's contractual indemnity claim should be dismissed because paragraph 14 of the lease is an exculpatory clause which is void as they are against public policy. Exculpatory clauses "excuse one party from liability for otherwise valid claims that may be made against him by the other." *McMinn v. Cavanaugh,* 177 Ill.App.3d 353, 357, 126 Ill.Dec. 658, 532 N.E.2d 343 (1988). On the other hand, indemnity clauses do not eliminate an otherwise valid claim; rather, indemnity clauses "merely shift[ ] the liability and responsibility for satisfaction of the plaintiff's claim from one party to another." *Id.* In 1963, the year in which the lease began, Illinois had the following rule:

> Every covenant … in … any lease of real property, except those business leases in which any municipal corporation, governmental unit or corporations regulated by a State or Federal commission or agency is lessor or lessee, exempting the lessor from liability for damages for injuries to person … caused by or resulting from the negligence of the lessor … in the operation or maintenance of the … premises … shall be deemed to be void as against public policy and wholly unenforceable.

*Booth v. Cebula,* 25 Ill.App.2d 411, 166 N.E.2d 618, 619 (1960) (quoting ILL.REV.STAT. ch. 80, sec. 15(a) (1959)).

In this case, paragraph 14 of the lease is not an exculpatory clause. Paragraph 14 is an indemnity provision because the provision is limited to liability and damages resulting from Bulk's, not Singer's, conduct. Therefore, this court finds that Singer's contractual indemnity provision is not an exculpatory clause and, thus, is not void.

Bulk's second argument is that Singer's contractual indemnity claim should be dismissed because Illinois courts have refused to extend indemnity provisions to cover environmental damage when the applicable law was not enacted at the time the parties executed the lease. For this proposition Bulk cites one case, *Greenburger v. Commander Packaging Corp.,* No. 92 C 1415, 1994 WL 188194, 1994 U.S. Dist. LEXIS 6160 (N.D.Ill. May 10, 1994).

In *Greenburger,* the plaintiff sued the defendant for reimbursement of expenses incurred in removing an underground storage tank and cleaning up contaminated soil. *Id.* 1994 W.L at *1, at *1. The claim for reimbursement was based on a lease provision, which provided that the lessee was to indemnify the lessor "against and from any penalty or damage or charges imposed for *any violation of any laws or ordinances." Id.* 1994 WL at *3, at *8 (emphasis added). In rejecting the plaintiff's claim for indemnity, the court stated that it would not infer that the parties intended the indemnity provision to cover "environmental damage occasioned by laws passed … after the signing of the lease." *Id.* 1994 WL at *3, at *8–9.

The present case is distinguishable from *Greenburger.* In *Greenburger,* the indemnity provision provided indemnification from damages resulting from a violation of any law or ordinance. In the present case, the indemnity clause does not specifically relate to violations of laws and ordinances; rather, it simply provides for indemnity for any liability arising from Bulk's use of the property. Thus this court does not find that Singer's claim for contractual indemnity should be dismissed based on *Greenburger.*

Bulk's third and final argument is that Singer's claim for contractual indemnity is barred by the ten-year statute of limitations that applies to claims on written contracts. Bulk argues that the statute of limitations began to run on the date the lease terminated, February 28, 1983 and, thus, the statute of limitations period ended in 1993.

In Illinois, there is a ten year statute of limitations on written contracts. 735 ILL.COMP.STAT. 5/13–206. Illinois has adopted the discovery rule in order to establish when a cause of action accrues. *G.J. Leasing v. Union Electric,* 825 F.Supp. 1363, 1369 (S.D.Ill.1993). The discovery rule holds "that a cause of action accrues the date upon which the plaintiff knew or should have known of the allegedly defective condition of the property." *Id.* "A cause of action for contractual indemnification accrues when the covenant of indemnity is breached by the indemnitor." *Carroll v. Acme–Cleveland Corp.,* 955 F.2d 1107, 1113 (7th Cir.1992).

In the present case, Bulk is the indemnitor. Bulk breached the covenant of indemnity when it refused to pay the clean up costs. It is on that date that Singer's claim for contractual indemnity accrued.[4] Accordingly, the court finds that the statute of limitations does not bar Singer's contractual indemnity claim.

In sum, the court rejects each of Bulk's three arguments as to why Count III of Singer's complaint should be dismissed. First, paragraph 14 of the lease is an indemnity provision and not an exculpatory clause. Second, *Greenburger* does not stand for the broad proposition for which Bulk cited it and it is not a basis on which Singer's claim should be dismissed. Finally, Singer's claim is not barred by the applicable statute of limitations. Accordingly, the court denies Bulk's motion to dismiss Count III of Singer's complaint.

### E. Count IV—Singer's claim for restitution

Count IV is a claim against Bulk for restitution. Bulk argues that Singer is not entitled to restitution because Singer has a legally enforceable duty to clean up the contaminated site.

The court need not address Bulk's arguments, however, because restitution is not an available remedy for a party if the relationship between the parties is governed by a contract. *Weyerhaeuser Co. v. Edward Hines Lumber Co.*, No. 91 C 623, 1991 WL 169385 at *6, 1991 U.S. Dist. LEXIS 11980, at *15 (N.D.Ill. Aug. 27, 1991) (citing *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985); *Stanley Gudyka Sales v. Lacy Forest Products Co.*, 686 F.Supp. 1301, 1306 (N.D.Ill.1988); *Industrial Lift Truck v. Mitsubishi Int'l*, 104 Ill.App.3d 357, 60 Ill.Dec. 100, 432 N.E.2d 999, 1002 (1982)). This is true even if the contract does not expressly address the matter sued upon. *First Commodity Traders*, 766 F.2d at 1011. As one court recently explained:

This rule is based on the notion that, in the give and take of the bargaining process, parties to a contract agree to the allocation of certain risks in the hope of obtaining a beneficial return and that allocation is reflected in the consideration paid by each party in reaching the agreement. If the remedy of restitution were available in this setting, one party would essentially be allowed to unilaterally shift the risks associated with the contract whenever its contractual expectations are not realized. The law does not allow such unilateral modification of private agreements.

*Weyerhaeuser*, 1991 WL 169385 at *6, 1991 U.S. Dist. LEXIS 11980, at *15–16 (internal citations omitted).

In this case, the parties relationship is governed by a contract, the lease. Thus, Singer cannot state a claim for restitution.

In the event that the court were to consider Singer's restitution claim to actually be a claim for implied indemnity, Bulk also makes several arguments as to why Singer cannot state such a claim. In her response brief, Singer states that "[t]he complaint does not assert a claim for implied or equitable indemnity." (Pl.'s Resp. at 14.) Thus, the court will not consider whether Count IV actually states a claim for implied indemnity.

In sum, Singer cannot state a claim for restitution. Further, Singer makes it clear that Count IV was a count only for restitution and not one for implied indemnity. Accordingly, the court grants Bulk's motion to dismiss Count IV of the complaint.

### F. Count V—Singer's claim under the Illinois Environmental Protection Act

Count V is a claim against Bulk for violations of the Illinois Environmental Protection Act ("IEPA"), 415 Ill.Comp.Stat. § 5/21(e). Bulk argues that Count V fails to state a claim because it was not the owner or operator of the USTs. Bulk bases this argument on the UST provisions of the IEPA.

Singer's action is based on an implied "private right of action for recovery of

---

4. Based on the complaint, the court is unable to identify the exact date the defendant refused to pay the costs; however, it must have been some-time after January of 1995, the date on which Singer learned of the contamination. (Compl.¶¶ 19–20).

clean-up costs under the IEPA" and not on the UST provisions. *Midland Life Ins. Co. v. Regent Partners I General Partnership,* No. 96 C 3235, 1996 WL 604038 *5, 1996 U.S. Dist. LEXIS 15545, at *17 (N.D.Ill. Oct. 17, 1996); *see Krempel v. Martin Oil Mktg.,* No. 95 C 1348, 1995 WL 733439 *2, 1995 U.S. Dist. LEXIS 18236, at *6 (N.D.Ill.Dec. 7, 1995). Thus, Singer's claim does not have to meet the requirements of the UST provisions. Singer has sufficiently alleged a claim for a private right of recovery by alleging acts of abandoning waste at the property. *See Midland,* 1996 U.S. Dist. LEXIS 15545, at *19 n. 5. Accordingly, the court denies Bulk's motion to dismiss Count V, Singer's IEPA claim.

### III. *CONCLUSION*

For the foregoing reasons, the court denies in part and grants in part defendant's motion to dismiss Singer's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant's motion to dismiss is granted as to Counts II and IV of the complaint. Defendant's motion to dismiss is denied as to Counts I, III, and V. Defendant is given until June 29, 1998 to file an answer to Counts I, III, and V of plaintiff's complaint.