SIERRA CLUB, a California nonprofit corporation; Citizens for Public Accountability, an Oregon nonprofit corporation; and Constitutional Law Foundation, an Oregon nonprofit corporation, Plaintiffs,

v.

HYUNDAI AMERICA, INC., a California corporation, Defendant.

No. Civ. 96–6131–HU.

United States District Court, D. Oregon.

July 23, 1997.

Marianne Dugan, Eugene, OR, for plaintiffs.

Richard Gleason, Per Ramfjord, Stoel Rives, Portland, OR, for defendant.

## ORDER

HOGAN, District Judge.

 Magistrate Judge Dennis J. Hubel filed Findings and Recommendation on March 26, 1997, in the above entitled case. The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b). When either party objects to any portion of a magistrate judge's Findings and Recommendation, the district court must make a *de* *novo* determination of that portion of the magistrate judge's report. *See* 28 U.S.C. § 636(b)(1); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.*, 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied*, 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461.

Defendant has filed timely objections. I have, therefore, given de novo review of Magistrate Judge Hubel's rulings and find as follows.

Plaintiffs filed a citizen suit under the Clean Water Act (CWA), 33 U.S.C. § 1251 et seq., alleging past and continuing violations of that law by defendant in connection with its National Pollution Discharge Elimination System (NODES) permit issued by the state of Oregon.

Defendant moved to dismiss [# 5] under Federal Rule of Civil Procedure 12(b) for lack of subject matter jurisdiction. Defendant argued plaintiffs' citizen suit was barred by the CWA because the Oregon Department of Environmental Quality (DEQ) had already initiated and was diligently prosecuting an administrative penalty action in the matter.

Judge Hubel issued a Findings and Recommendation which concluded that the state of Oregon had not commenced an administrative penalty action in the matter and that plaintiffs' suit was therefore not precluded.

Defendant asserts that the magistrate judge erred in concluding the state's actions did not constitute commencement of an administrative penalty action within the context of the CWA.

As supplemented by the additional reasoning provided below, I agree with Judge Hubel's interpretation of the case law as it exists in this circuit and the statutory provisions at issue here. In addition, I find that the record supports the magistrate judge's conclusion that the Oregon Department of Environmental Quality (DEQ) had not commenced an administrative penalty action against defendants.

 Judge Hubel found that, although DEQ had commenced administrative proceedings prior to plaintiffs' notice of violation under 33 U.S.C. § 1365(b), these administra-

tive proceedings were insufficient under the law of this circuit to constitute commencement and diligent prosecution of an action under a state law comparable to 33 U.S.C. § 1319(g), the CWA's administrative penalties provision. Judge Hubel reasoned that a penalty must have been assessed for such an action to have been "commenced."

Plaintiffs filed a section 1365(b) notice of violation on March 1, 1996. DEQ issued a Notice of Assessment of Civil Penalty on April 30, 1996. Plaintiffs filed the present suit on May 13, 1996, more than sixty days, but not more than 120 days, after the notice. Judge Hubel concluded that plaintiffs' suit was not barred because DEQ had not commenced administrative *penalty* proceedings prior to plaintiff's notice of violation and that plaintiffs filed suit within 120 days of that notice.

In support of the proposition that assessment of a penalty by a state or federal agency is required to constitute commencement of an action, Judge Hubel cites three Ninth Circuit cases: *Knee Deep Cattle Co. v. Bindana Investment Co.*, 94 F.3d 514, 516 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1027, 137 L.Ed.2d 212 (1997) ("This Court has previously determined that for § 1319(g)(6)(A) to apply, the comparable state law must contain penalty provisions and a penalty must *actually have been assessed* under the state law." 94 F.3d at 516 (emphasis added)); *Washington PIRG v. Pendleton Woolen Mills*, 11 F.3d 883 (9th Cir. 1993) ("If Congress had intended to preclude citizen suits in the face of an administrative compliance order, it could easily have done so, as it has in certain other environmental statutes."); *Citizens for a Better Environment–California v. UNOCAL*, 83 F.3d 1111 (9th Cir.1996), *cert. denied,* —— .U.S. ——, 117 S.Ct. 789, 136 L.Ed.2d 731 (1997) ("because UNOCAL has not paid a 'penalty,' the § 1319(g)(6)(A)(iii) bar to citizen suits does not apply.").

In its objections, defendant correctly points out that in none of these cases is the holding directly on point. The reasoning, however, is applicable and compelling in the context of the law within this circuit.[1]

Plaintiffs here seek both injunctive and declaratory relief, as well as civil penalties. The limitations in section 1319(g)(6)(A) apply only to actions for civil penalties. The statute states that violations which the state is diligently prosecuting "shall not be the subject of a civil penalty action." Under 33 U.S.C § 1365(a), citizens may sue for civil penalties as well as various forms of injunctive relief. Thus, regardless of the applicability of the limitations on civil penalties in section 1319(g)(6)(A), plaintiffs' right to seek injunctive or declaratory relief appears to be unimpaired.

Despite the terms of the statute, some courts have read limitations in section 1319(g)(6)(A) to apply to civil penalty actions as well as injunctive and declaratory relief. In *North & South Rivers Watershed Ass'n v. Scituate*, 949 F.2d 552 (1st Cir.1991), the court held that the bar in section 1319(g)(6)(a) applies to injunctive relief as well as civil penalties. *Id.* at 557–58. The court based its reasoning for departing from the plain meaning of the statute on the subordinate function of citizen suits. *See also Arkansas Wildlife v. ICI Americas, Inc.*, 29 F.3d 376, 383 (8th Cir.1994) (injunctive relief as well as civil penalties foreclosed by comparable state action).

1. Courts in other circuits have reached different conclusions from those prevailing in the Ninth Circuit. *North & South Rivers Watershed Ass'n v. Town of Scituate*, 949 F.2d 552 (1st Cir.1991) (rejecting contention that citizen suit is barred only if the state is actively seeking monetary sanction); *Arkansas Wildlife Fed. v. ICI Americas, Inc.*, 29 F.3d 376 (8th Cir.1994) (injunctive relief and civil penalties foreclosed); *United State Environmental Protection Agency v. City of Green Forest*, 921 F.2d 1394 (8th Cir.1990) (existence of consent decree negotiated between defendant and EPA precludes citizen suit); *United States v. Smithfield Foods, Inc.*, 965 F.Supp. 769, 796 n. 34 (E.D.Va.1997) (Commonwealth does not have to seek or impose administrative penalties to bar citizen suit); *Williams Pipe Line Co. v. Bayer Corp.*, 964 F.Supp. 1300, 1323–24 (S.D.Iowa 1997) ("Diligent prosecution is not limited to ordering compliance with the CWA by a date certain, according to a timetable, and providing civil penalties for violations."); *Sierra Club v. Colorado Ref. Co.*, 852 F.Supp. 1476 (D.Colo. 1994) (state action need not entail monetary penalties to have preclusive effect); *New York Coastal Fishermen's Ass'n v. New York City Dep't of Sanitation*, 772 F.Supp. 162 (S.D.N.Y.1991) ("it cannot be reasonably argued that only when a penalty is actually imposed that a citizen suit is precluded").

The Ninth Circuit has not addressed this issue, but the reasoning of the district court in *California Sportfishing Protection Alliance v. City of West Sacramento*, 905 F.Supp. 792 (E.D.Cal.1995), is persuasive. In *California Sportfishing*, the court concluded that "[t]he language of the statute is unambiguous that only civil actions are barred." *Id.* at 806. The court also noted the perils of reaching a conclusion at odds with the plain meaning of the statute based on a policy consideration "when dealing with a statute so complex as the Clean Water Act which has within it so many cross currents." *Id.* at 806 (citing *Pendleton*, 11 F.3d at 886–87).

It would require a significant departure from the plain meaning of the statute to find plaintiffs' case for injunctive or declaratory relief barred by section 1319(g)(6)(A).

Accordingly, I ADOPT Judge Hubel's Findings and Recommendation. Defendant's motion to dismiss [# 5] is denied.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

HUBEL, United States Magistrate Judge.
March 27, 1997.

Plaintiffs filed a citizens suit under the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, alleging numerous violations of a National Pollutant Discharge Elimination System ("NPDES") permit issued to defendant for construction of its manufacturing facility. Plaintiffs seek declaratory and injunctive relief, as well as civil penalties. Before the court is defendant's motion (# 5) to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

## BACKGROUND

Defendant is engaged in the construction of a semiconductor fabrication plant in Eugene, Oregon. Because part of this construction activity requires excavation of several acres of land, defendant was required to obtain a NPDES 1200–C storm water discharge permit. This permit is part of an over-all erosion control plan required of defendant in connection with construction of its plant. Part of the erosion control plan is a storm water detention pond from which water is periodically released. Defendant began to release storm water from the pond in January of 1996.

On January 30, 1996, inspectors from the Oregon Department of Environmental Quality ("DEQ"), inspected the construction site and found turbid, or mud-laden water, flowing from the pond in violation of the NPDES permit. On February 13, DEQ issued a Notice of Noncompliance ("NON"), pursuant to Oregon Administrative Rule ("OAR") 340–12–041. The NON stated that a lack of soil cover and the resulting turbidity of the storm water runoff violated the permit. DEQ inspectors returned on March 1 and 4, 1996, again finding turbid storm water discharge. A second NON was issued on March 6, requiring defendant to take further remedial measures. By April 12, 1996, defendant had undertaken all actions required by the March 6, NON.

On April 30, DEQ issued to defendant a Notice of Assessment of Civil Penalty ("NACP") and Notice of Permit Violation ("NPV"), based on violations specified in the previous NONs. The NACP assessed a fine of $14,400 and required defendant to either certify in writing full compliance with the permit or develop a written plan that would bring itself into full compliance with the permit. Defendant appealed the assessed fine which was eventually settled with a Mutual Agreement and Order between DEQ and defendant on July 31, 1996. The fine was reduced to $12,000.

In the meantime, starting in February of 1996, plaintiffs began a series of independent investigations of the turbidity of the storm water discharge from defendant's site. Plaintiffs allege that defendant has exceeded the turbidity requirements on at least 22 occasions in addition to the three occasions forming the basis of the DEQ action. Plaintiffs allege that some of these violations occurred after defendant issued its letter of compliance to DEQ. Based on their investigations, on March 1, 1996, plaintiffs filed a 60 day notice of intent to sue for alleged violations of the CWA, prior to DEQ's issuance of the second NON, and the NACP and NPV. Plaintiffs thereafter filed the present suit on May 13, 1996.

## DISCUSSION

33 U.S.C. section 1365(a) allows any citizen to commence a civil action against any person for alleged violations of an effluent standard or limitation. Subsection (b) of section 1365 requires that citizens give 60 days notice to the alleged violator, to the state where the violation is alleged to have occurred and to the Administrator of the Environmental Protection Agency before commencing a civil suit. The issue in defendant's motion is whether 33 U.S.C. section 1319(g)(6)(A) precludes plaintiffs from establishing subject matter jurisdiction of this court.

Section 1319(g)(6)(A)(ii) precludes citizen suits under section 1365 when a "[s]tate has commenced and is diligently prosecuting an action under a State law comparable to this subsection...." [1] However the above limitation on citizen suits does not apply if notice of the alleged violation is given 60 days prior to filing suit and the suit is thereafter filed within 120 days. 33 U.S.C. § 1319(g)(6)(B)(ii).

The focal point, then, of this motion to dismiss is whether plaintiff's gave notice of their intention to sue before DEQ commenced an action under state law that is comparable to subsection 1319(g).

Defendant argues that DEQ's issuance of the NON on February 13, 1996, is an administrative penalty action that qualifies as a comparable state law for purposes of 33 U.S.C. section 1319(g)(6)(A)(ii). Therefore, defendant alleges, plaintiffs are precluded from establishing subject matter jurisdiction.

Plaintiff argues against preclusion in this case because governmental penalty actions did not begin until after they filed their intention to sue. Plaintiffs' argument is in accord with recent Ninth Circuit case law which directly answers the question at issue. *Knee Deep Cattle Co., Inc., v. Bindana Investment Co., Ltd.,* 94 F.3d 514 (9th Cir. 1996), *cert. dismissed,* —— U.S. ——, 117 S.Ct. 1027, 137 L.Ed.2d 212 (1997). Although the parties discuss many additional issues in their briefs, this court need only

consider the narrow issue of when a state enforcement action is comparable to the CWA in order to find preclusion of a citizen suit. Because I find that the action undertaken by DEQ in this case cannot meet the Ninth Circuit test outlined below, defendant's motion to dismiss should be denied.

If the NON issued on February 13, was construed as a penalty enforcement action, as defendant argues it should, then plaintiffs' suit would be precluded because this court would lack subject matter jurisdiction. However, that NON is essentially an administrative compliance order. Section 1319(g)(6)(A) cannot be read to preclude citizen suits when an administrative agency has issued only a compliance order. *Washington Public Interest Research Group v. Pendleton Woolen Mills,* 11 F.3d 883, 886 (9th Cir.1993). "[I]f Congress had intended to preclude citizen suits in the face of an administrative compliance order, it could easily have done so, as it has done in certain other environmental statutes." *Id.*

"The provisions of § 1319(g)(6)(A) are precisely designed to preclude citizen · suits which would be duplicative of an 'administrative penalty action.'" *Citizens for a Better Environment–Cal. v. UNOCAL,* 83 F.3d 1111, 1115 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 789, 136 L.Ed.2d 731 (1997). "[F]or § 1319(g)(6)(A) to apply, the comparable state law must contain penalty provisions and a penalty must actually have been assessed under state law." *Knee Deep,* 94 F.3d at 516 (emphasis added). Therefore, the provisions of Oregon law that DEQ acted under before plaintiffs' notice of intent to sue must contain penalty provisions, and any penalty must have actually been assessed before the notice of intent to sue as well. If DEQ actions prior to plaintiffs' filing of intent to sue do not meet the above test, then defendant's motion should be denied.

■ Defendant argues in its reply brief at pages 3–4 that the savings provision of 33 U.S.C. § 1319(g)(6)(B)(ii) does not apply in this case. That clause states:

> The limitations contained in subparagraph (A) on civil penalty actions under section

---

1. "This subsection" refers to 33 U.S.C. § 1319(g), which is a comprehensive provision

for the assessment of administrative penalties.

1365 of this title shall not apply with respect to any violation for which ... (ii) notice of an alleged violation of section 1365(a)(1) of this title has been given in accordance with section 1365(b)(1)(A) of this title prior to commencement of an action under this subsection and an action under section 1365(a)(1) of this title with respect to such alleged violation is filed before the 120th day after the date on which such notice is given.

33 U.S.C. § 1319(g)(6)(B).

Essentially defendant urges this court to read the above section as only lifting the preclusive effects of 33 U.S.C. § 1319(g)(6)(A) as to federal administrative actions, and not state enforcement efforts, despite the reference to state action in section 1319(g)(6)(A)(ii) and (iii). Defendant uses the reference to "action under this subsection" to support this argument. Defendant also cites *California Sportfishing Protection Alliance v. City of West Sacramento*, 905 F.Supp. 792 (E.D.Cal.1995), in support.

In that case, the district court held that section 1319(g)(6)(B), lifting bans on citizens suits found in subparagraph (A), "has no application to state enforcement actions." *Id.* at 801–02.

> [W]hereas subsection (A) explicitly bars citizen suits when the state is prosecuting a penalty action or has finished such a prosecution and the penalty paid, subsection (B) only addresses the lifting of the bar in the circumstance of a federal administrative penalty action by the Administrator of EPA or Secretary of the Army. This is because the bar to suit is partially lifted only for 'an action under this subsection,' a reference to § 1319(g) which applies only to administrative penalty actions brought by the Administrator and the Secretary. By contrast, a state administrative action is not brought under subsection 1319(g) but under a 'State law comparable to this subsection.'

*Id.* at 802. I decline to follow the reasoning of the district court above because it fails to recognize the plain language of subparagraph (B) which lifts all the limitations found in subparagraph (A). Subparagraph (A) pertains to both federal *and* state actions. If this argument was adopted it would effectively read the purpose of the CWA out of subparagraph (B). This purpose is to lift the preclusive effect of subparagraph (A) when citizens give 60 days notice before filing suit and then file suit within 120 days, as required by section 1365(b)(1). Because I find that subparagraph (B) does apply to state enforcement actions, the time frame of DEQ's enforcement actions as compared to plaintiffs' notice is important.

DEQ did not assess a penalty until the April 30, 1996, NACP. The NON issued on February 13, 1996, does not contain any mention of penalties. At most it contains a warning that three NONs within a 36 month period could lead to a more formal enforcement action called a NPV. Therefore, none of DEQ's actions prior to April 30, were pursuant to a comparable state law under the test announced in *Knee Deep*, because this was the first time a penalty had actually been assessed. Plaintiffs' notice of intent to sue on March 1, therefore, gives plaintiffs the right to proceed with this action because, the notice came before DEQ commenced an administrative penalty action. *See* 33 U.S.C. § 1319(g)(6)(B)(ii).

## CONCLUSION

Because DEQ did not assess penalties upon defendant before plaintiffs filed their notice of intention to sue, this suit should not be precluded. Therefore, defendant's motion (# 5) should be denied.