**KARA HOLDING CORP., Plaintiff,**

v.

**GETTY PETROLEUM MARKETING, INC., Getty Properties Corp., Getty Realty Corp., Leemilt's Petroleum Inc., and The Tyree Organization Ltd., Defendants.**

No. 99 Civ. 0275(RWS).

United States District Court, S.D. New York.

Sept. 22, 1999.

---

Kaming & Kaming, New York City by Joseph S. Kaming, Elizabeth C. Kaming, Sean O'Donnell, of counsel, for plaintiff.

Law Offices of Robert G. Del Gadio, Uniondale, NY by Lawrence S. Novak, of counsel, for defendants.

## OPINION

SWEET, District Judge.

Defendants Getty Petroleum Marketing, Inc. ("Getty Petroleum"), Getty Properties Corp. ("Getty Properties"), and Getty Realty Corp. ("Getty Realty") (collectively, "Getty"), as well as Leemilt's Petroleum, Inc. ("Leemilt's"), and The Tyree Organization, Ltd. ("Tyree") have moved pursuant to Rules 12(b)(1), 12(b)(6), and 56(b) of the Federal Rules of Civil Procedure to dismiss the complaint in this action. For the reasons stated herein, the motion is granted in part, and denied in part.

### The Parties

Plaintiff Kara Holding Corp. ("Kara") is a New York corporation with its principal place of business in Bronx, New York.

Defendant Getty Petroleum is a corporation authorized to do business in the State of New York, with business locations in Bronx, New York and Manhattan.

Defendant Getty Properties is a corporation authorized to do business in the State of New York, with a business location in Manhattan.

Defendant Getty Realty is a corporation authorized to do business in the State of New York, with a business location in Manhattan.

Defendant Leemilt's is a corporation authorized to do business in the State of New York, with business locations in Jericho, New York and Manhattan.

Defendant Tyree is a corporation authorized to do business in the State of New York with business locations in Brookfield, Connecticut and Farmingdale, New York.

*Facts*

The following facts are undisputed by the parties, except where otherwise indicated.

The instant action arises out of a petroleum spill that occurred on April 2, 1997 at Getty Service Station # 329 (the "Getty station" or the "station"), a gas station located in Bronx, New York. Plaintiff, the owner of a building situated adjacent to the gas station, contends that a gasoline spill or spills at the station have resulted in considerable soil and groundwater contamination, as well as contamination of the Bronx River—which is located only a short distance away. Defendants are, variously, the alleged owner(s) and operator(s) of the Getty Station, or related corporate entities—though the parties apparently disagree as to which corporate entities are actually responsible for operation of the Getty station.

Plaintiff's building is rented by the New York City Human Resources Administration (the "HRA"). Located at the building is an HRA office known as the "Colgate Learning Center," which is responsible for the administration of public assistance programs.

On April 2, 1997, the Colgate Learning Center was evacuated because of gasoline vapors attributable to petroleum spilled at the Getty station. According to Defendants, the discharge of petroleum at the gas station was halted on April 2nd, and remediation of the spill began in earnest on that very same day—when a response team from defendant Tyree was dispatched to the gas station and began the removal of contaminants.

By letter dated November 19, 1997, New York State's Department of Environmental Conservation (the "DEC") contacted Scott Hanley of Getty Properties to obtain Getty's voluntary commitment to "cleanup and remove" the petroleum contamination at the gas station. (Hanley Aff.Ex. B.) Enclosed with the letter was a proposed Stipulation Agreement (the "Stipulation")

that set a schedule for Getty's remediation efforts and allowed cleanup activities to proceed without the need for additional DEC permits. By signing the stipulation, the letter informed Hanley, Getty was not admitting any liability under New York's Navigation Law or waiving any defenses it might have to liability. By the same token, however, the letter informed Hanley that Getty's agreement to remedy the petroleum discharge itself would not affect the DEC's ultimate right to pursue an action under the Navigation Law or New York's Environmental Conservation Law.

On December 10, 1997, Getty Realty signed the Stipulation on behalf of "Getty"—the generic entity listed on the Stipulation's caption. By its own terms, the Stipulation was. "equivalent to an order pursuant to [New York's] ECL §§ 17–0303 and a directive pursuant to NL § 176 and is enforceable as such." (Hanley Aff.Ex. B.) Getty's cleanup efforts were to be conducted in accordance with a "Corrective Action Plan" setting forth a timetable for the cleanup of petroleum wastes.

By complaint dated December 9, 1998, the DEC, nevertheless, commenced an administrative enforcement action concerning groundwater and soil contamination at the Getty station and adjoining properties. The complaint asserted, *inter alia,* violations of New York's Environmental Conservation Law and Navigation Law, and sought declaratory relief, injunctive relief, and civil penalties. Named as defendants in that complaint were Getty Petroleum, Getty Realty, and Getty Petroleum Corp., a predecessor of defendant Getty Properties.

According to the Defendants, the DEC has diligently prosecuted that enforcement action, and a pre-hearing conference was conducted to that end on January 25, 1999. In an affidavit submitted by Defendants, a representative of Getty Properties with oversight responsibility for the remediation of petroleum contamination at the Getty station also states that Getty and the DEC are currently engaged in negotia-

tions expected to lead to a "consent order based upon a revised corrective action plan to be approved by the DEC." (Hanley Aff. ¶ 15.) Papers submitted by defendants also assert that remediation activities at the Getty station continue to the present day.

While plaintiff Kara has asserted that the petroleum contamination at issue in this action has its origins in a discrete spill event in April of 1997, it also claims that the petroleum hydrocarbon wastes released during that spill have yet to be fully cleaned, and that additional spill events have occurred since April of 1997. According to the papers submitted by Kara, the Colgate Learning Center has been evacuated on multiple occasions over the past several years as a result of gasoline vapors attributable to the Getty station's spilled petroleum. These vapors, which emanate from the basement of Kara's building, have resulted in repeated complaints by HRA employees, and have required responses from the New York City Fire Department and a "HAZMAT" unit. According to Kara, groundwater contaminated by petroleum and petroleum products enters the cellar of the Colgate Learning Center periodically, creating a potentially explosive petroleum water and vapor condition. In late spring of 1998, samples taken from wells on the Getty property revealed elevated levels of petroleum constituents in the groundwater circulating beneath the Getty station.

The complaint in this action was filed on January 14, 1999, and asserts federal causes of action under the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976 and Solid Waste Amendments of 1984 (referred to collectively as the "RCRA"), 42 U.S.C. § 6901 *et seq.*, and the Clean Water Act (the "CWA"), 33 U.S.C. § 1251 *et seq.*, as well as various state claims for trespass, nuisance, negligence, gross negligence, intentionally wrongful conduct, indemnity, restitution, and violations of New York's Navigation Law and Education Law. For its federal RCRA and CWA claims, Kara requests injunctive relief, declaratory relief, the imposition of civil penalties, and an award of both costs and attorneys' fees.

Defendants filed the instant motion on March 22, 1999. Oral argument was heard on April 14, 1999, at which time the motion was deemed fully submitted.

## Discussion

Summary judgment is appropriate only where the evidence is such that a reasonable jury could not return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Under Rule 56(c), Fed.R.Civ.P., it shall be rendered "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As the Second Circuit has explained:

> "As a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." However, where the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim.

*Bay v. Times Mirror Magazines, Inc.,* 936 F.2d 112, 116 (2d Cir.1991) (*quoting Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988) (internal citations omitted)).

Defendants have asserted two basic grounds for dismissal. First, Defendants assert that the DEC's commencement of an administrative enforcement action bars Kara's suit under the RCRA, and that any claim brought under the aegis of the CWA is similarly precluded by New York's diligent prosecution of that administrative action. Second, Defendants contend that

Kara has failed to establish that any gasoline spill(s) at the Getty station have resulted in an imminent and substantial endangerment to health or the environment, as is required by section 7002(a)(1)(B) of the RCRA. These alternate grounds for dismissal shall be addressed in turn.

### I. Kara's RCRA and CWA Claims Are Not Precluded by the DEC's Enforcement Activities

Under the citizen suit provisions of the RCRA, " 'any person' may commence a civil action on his own behalf" either "against any person ... who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order" effective pursuant to the RCRA, 42 U.S.C. § 6972(a)(1)(A), or "against any person ... who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). This right to sue as a private attorney general has its limitations, however. In addition to a whole host of procedural restrictions not specifically at issue in the present litigation, including the requirement that potential litigants provide formal notice of alleged violations or endangerments in advance of filing suit, see 42 U.S.C. § 6972(b)(1)(A), (b)(2)(A), the RCRA provides that no action may be commenced by a private litigant under subsection (a)(1)(A) for a violation:

> if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or a State to require compliance with such permit, standard, regulation, condition, requirement, prohibition, or order.

42 U.S.C. § 6972(b)(1)(B). Likewise, no action may be commenced by a private litigant under subsection (a)(1)(B) for an imminent and substantial endangerment:

if the State, in order to restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment—

> (i) has commenced and is diligently prosecuting an action under subsection (a)(1)(B) of this section;
>
> (ii) is actually engaging in a removal action under section 104 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 [42 U.S.C. § 9604]; or
>
> (iii) has incurred costs to initiate a Remedial Investigation and Feasibility Study under section 104 ... and is diligently proceeding with a remedial action under that Act....

42 U.S.C. § 6972(b)(2)(C).

Defendants press that dismissal is required pursuant to section 6972(b)(2)(C), in that the DEC had already commenced an administrative enforcement action by the time Kara filed the complaint in the instant action, and "Getty" had also previously entered into a Stipulation agreeing to remedy the petroleum contamination. In their papers, Defendants contend that the DEC enforcement action—which asserts causes of action for violations of state environmental laws and seeks injunctive relief as well as significant civil penalties—precludes Kara's RCRA claim. Defendants also suggest that the "word 'action' as used in the [RCRA] statute does not appear to connotate [sic] a legal action but merely activities to remove the contamination." (Defs.' Mem.Law Supp.Mot. Summ.J. at 4 n. 2.)

A review of the cases specifically interpreting section 6972(b) reveals that Defendants have either neglected to research and read applicable caselaw or simply decided to avoid bringing contrary authority to the attention of the Court, and consequently have required both the Court and opposing counsel to undertake research that could well have been avoided.

Under the clear language of 42 U.S.C. § 6972(b)(1)(B), the only state action capable of precluding a citizen suit under section 6972(A)(1)(A) is a "civil or criminal action in a court." This language does not afford any preclusive effect to a state administrative action.

Claims brought under section 6972(A)(1)(B) are admittedly governed by less straightforward preclusionary language. Yet, most courts that have focused any attention on 42 U.S.C. § 6972(b)(2)(C)(i) have held as a matter of course that state administrative "actions" are not covered by its terms. *See Gilroy Canning Co. v. California Canners & Growers*, 15 F.Supp.2d 943, 946–47 (N.D.Cal.1998) (state administrative actions do not preclude RCRA claims under terms of section 6972(b)(2)(C)); *Echternach v. D.H. Martin Petroleum Co.*, No. 97 C 3802, 1997 WL 627646, at *2–3 (N.D.Ill. Sept.30, 1997) ("[S]ubsection (b)(2)(C)(i) only bars (a)(1)(B) claims where a state has brought an action in court."); *Goe Engineering Co. v. Physicians Formula Cosmetics, Inc.*, No. CV 94–3576–WDK, 1997 WL 889278, at *8 (C.D.Cal. June 4, 1997) ("[W]hile Congress could have stated its intent more clearly, this Court holds that subsection (b)(2)(C)(i) only prohibits (a)(1)(B) claims where a state has brought an action in court."); *Orange Env't, Inc. v. County of Orange*, 860 F.Supp. 1003, 1024–25 (S.D.N.Y.1994) (same). Given the language of section (b)(2)(C)(i), such an action must also specifically press claims under the RCRA. *See Goe Engineering*, 1997 WL 889278, at *9 n. 6 ("[E]ven if section (b)(2)(C)(i) were read to preclude citizen suits where the state has taken 'administrative' rather than 'court' action, the action must be taken 'under subsection (a)(1)(B)....' There is no evidence that the actions taken by the RWQCB have been taken under RCRA rather than under state law."); *Hudson Riverkeeper Fund, Inc. v. Harbor at Hastings Assocs.*, 917 F.Supp. 251, 256 (S.D.N.Y.1996) (observing that language of subsection (b)(2)(C)(i) "seems to suggest that any state action, to qualify as barring the RCRA action, must be brought under the act itself," but finding that action in state court of general jurisdiction "is the equivalent of one brought under the RCRA").

■ Thankfully, the instant motion does not require resolution of the more thorny questions raised by the language of section 6972(b)(2)(C), as state administrative actions simply do not constitute "actions" under subsection (b)(2)(C)(i), New York State had not engaged in any "removal action" under the meaning of subsection (b)(2)(C)(ii) as of the filing of Kara's suit, *c.f. Orange Env't*, 860 F.Supp. at 1026–28 (discussing "removal actions" under meaning of statute), and none of the other preclusionary provisions of 42 U.S.C. § 6972(b) apply to the facts of this case. *See Echternach*, 1997 WL 627646, at *2–3 (holding that state agency's issuance of administrative "violation notice letter" to RCRA defendant allegedly responsible for gasoline spill did not constitute bar to citizen suit under subsections (b)(2)(C)(i)–(iii); subsection (b)(2)(C)(i) requires state action to be prosecuted in court, and subsections (b)(2)(C)(ii)–(iii) "state precise administrative actions taken pursuant to a specific section of CERCLA").

Private rights of action under the CWA are governed by a similar, though not identical, statutory regime. Like the RCRA, citizen suits are only intended to allow private attorneys general to fill the gaps in public enforcement endeavors, and are oftentimes conditioned upon the failure of federal and state officials to exercise their own enforcement responsibilities. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49, 60, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). Under the CWA, "any citizen may commence a civil action on his own behalf":

against any person ..; who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administra-

tor or a State with respect to such a standard or limitation. . . .

33 U.S.C. § 1365(a)(1). As with the parallel statutory scheme governing RCRA suits under 42 U.S.C. § 6972(a)(1)(A), however, no private action under section 1365(a)(1) may be brought "if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance." 33 U.S.C. § 1365(b)(1)(B). The Second Circuit has specifically considered whether a state administrative action qualifies as an "action in a court" under this language and resolved that it does not. *See Friends of the Earth v. Consolidated Rail Corp.*, 768 F.2d 57, 62 (2d Cir.1985) ("The Clean Water Act citizen suit provision unambiguously and without qualification refers to an 'action in a court of the United States, or a State.' . . . It would be inappropriate to expand this language to include administrative enforcement actions."); *see Jones v. City of Lakeland*, 175 F.3d 410, 414 (6th Cir.1999) (state administrative proceedings against polluter "unquestionably are not actions taken in court as contemplated by Congress").

An additional layer of complexity is added by 33 U.S.C. § 1319(g)(6)(A)(ii), which mandates in part that violations "with respect to which a state has commenced and is diligently prosecuting an action under a state law comparable to this subsection . . . shall not be the subject of a civil penalty action under subsection (d) of this section or section 1321(b) of this title or section 1365 of this title."

There is a wide range of judicial opinion concerning the parameters of administrative preclusion under subsection (g)(6)(A)(ii), especially insofar as the diligence of state prosecution and comparability of state legal regimes are concerned. Nevertheless, Defendants' contention that a DEC administrative action can preclude certain CWA claims is perhaps most accurate in the context of section 1365(g)(6)(A), in that preclusive effect is not only accord-

ed to actions in state courts. *See Jones,* 175 F.3d at 415 (state administrative enforcement proceedings under comparable state law covered by language of section 1319(g)(6)(A)); *Orange Env't,* 860 F.Supp. at 1014–16 (DEC's diligent prosecution of administrative action precludes suit for civil penalties under CWA; state environmental laws and regulatory scheme comparable to federal regulatory regime); *Saboe v. State of Oregon,* 819 F.Supp. 914, 918–19 (D.Or.1993) (Oregon Division of State Lands' final administrative consent order fining Oregon Department of Transportation an "action" under comparable state law precluding plaintiffs' suit).

A qualifying administrative action appears to operate as a bar only to civil penalty actions, and not CWA claims seeking merely declaratory or injunctive relief. *See Sierra Club v. Hyundai America, Inc.,* 23 F.Supp.2d 1177, 1179 (D.Or.1997); *Orange Env't,* 860 F.Supp. at 1017–18; *Coalition for a Liveable West Side, Inc. v. New York City Dep't of Envtl. Protection,* 830 F.Supp. 194, 196 (S.D.N.Y.1993); *New York Coastal Fishermen's Assoc. v. New York City Dep't of Sanitation,* 772 F.Supp. 162, 169 (S.D.N.Y.1991). Setting this issue aside, however, additional language in the CWA makes clear that the limitations of section 1319(g)(6)(A) do not apply with respect to violations for which:

> notice of an alleged violation of section 1365(a)(1) of this title has been given in accordance with section 1365(b)(1)(A) of this title prior to commencement of an action under this subsection and an action under section 1365(a)(1) of this title with respect to such alleged violation is filed before the 120th day after the date on which such notice is given.

33 U.S.C. § 1319(g)(6)(B).

■ Notice was given by Kara of its intent to sue Defendants on or about October 2, 1998, and the form of that notice has not been challenged. The complaint in this action was filed on January 14, 1999, less than 120 days thereafter. Consequently, while the DEC enforcement ac-

tion was initiated prior to the commencement of the instant lawsuit, by the very terms of the governing statute the provisions of section 1319(g)(6)(A) do not apply. *See Louisiana Envtl Action Network, Inc. v. Evans Cooperage Company, Inc.,* No. Civ.A. 95–3002, 1997 WL 824310, at *5 (E.D.La. Sept.30, 1997); *Sierra Club,* 23 F.Supp.2d at 1179, 1181–82; *Ohio Envtl Council v. Vari–Seal Mfg. Corp.,* No. C88–3299, 1989 WL 106710, at *1 (N.D.Ohio Apr. 13, 1989).

Defendants have attempted to bolster their position that state administrative actions generally preclude citizen suits by invoking *Meghrig v. KFC Western,* 516 U.S. 479, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996), in which the Supreme Court stated that "no citizen suit can proceed [under 42 U.S.C. § 6972(a)(1)(B)] if either the EPA or the State has commenced, and is diligently prosecuting, a separate enforcement action." *Id.* at 486, 116 S.Ct. 1251. Setting aside the fact that the *Meghrig* case did not present the Court with any question whatsoever concerning the proper interpretation of 42 U.S.C. § 6972(b)(2)(B), and that the portion of text selected by Defendants is therefore dicta, the text itself does not yield any definite conclusions about the meaning of "enforcement action." Nowhere in the *Meghrig* decision, for example, does the Supreme Court ever indicate that such an action may be an enforcement action in an administrative arena, as opposed to an enforcement action in the courts alone.

*Meghrig* did not alter the entire RCRA and CWA statutory regime. Defendants' motion is denied insofar as it seeks dismissal of the instant action because of the DEC's administrative activities.

## II. *Defendants' Motion for Summary Judgment on Kara's RCRA Claim is Granted in Part, and Denied in Part*

Defendants next press that dismissal of Kara's RCRA claim is required because the discharge of petroleum at the Getty station was "halted on the day it began." (Defs.' Mem.Supp.Mot.Summ.J. at 5.) According to Defendants, plaintiff Kara is only entitled to recovery on their RCRA claim if there is, at present, an "imminent and substantial" endangerment to health or the environment. Because defendant Tyree has been remediating and continues to clean the petroleum contamination in the vicinity of the Getty station, Defendants claim that they are therefore entitled to summary judgment.

■ While RCRA is a "comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste," *Meghrig,* 516 U.S. at 483, 116 S.Ct. 1251, it is "not principally designed to effectuate the cleanup of toxic waste sites or to compensate those who have attended to the remediation of environmental hazards." *Id.* Consequently, while the RCRA contains a private attorney-general provision allowing private citizens to sue for relief, as interpreted by the courts it does not allow suits by private citizens to recover for purely past damages or to recover costs already incurred by a plaintiff to respond to an environmental hazard of the defendant's creation. *See id.* at 484–88, 116 S.Ct. 1251. As a result, any claims that Kara might have for past costs or damages cannot be pursued under the RCRA. To the extent that Kara's RCRA prayer for relief requests civil penalties for past events and "declaratory judgment" for "all remedial costs incurred" as a consequence of wastes discharged by the Getty station, those portions of the complaint shall therefore be dismissed as a matter of law. (Compl.¶¶ 49, 51.)

To successfully prosecute a claim under 42 U.S.C. § 6972(a)(1)(B), a RCRA plaintiff must ultimately demonstrate that:

(1) the defendant was or is a generator or transporter of solid or hazardous waste or owner or operator of a solid or hazardous waste treatment, storage or disposal facility, (2) the defendant has contributed or is contributing to the

handling, storage, treatment, transportation, or disposal of solid or hazardous waste, as defined by RCRA, and (3) that the solid or hazardous waste in question may pose an imminent and substantial endangerment to health or the environment.

*Prisco v. A & D Carting Corp.,* 168 F.3d 593, 608 (2d Cir.1999). Defendants do not contend that petroleum is not considered a hazardous waste under the RCRA, or gainsay that a petroleum spill at the Getty station could result in RCRA liability for an owner, operator, or transporter. *See generally Mutual Life Ins. Co. v. Mobil Corp.,* No. CIVA96CV1781RSP/DNH, 1998 WL 160820, at *1–3, 5 (N.D.N.Y. Mar.31, 1998) (denying defendant's motion to dismiss RCRA and CWA claims arising from gasoline spill); *Singer v. Bulk Petroleum Corp.,* 9 F.Supp.2d 916, 920 (N.D.Ill.1998) (denying defendant's motion to dismiss RCRA claim arising out of petroleum leak, as complaint "specifically allege [d] that petroleum products have migrated through the soil, that petroleum contamination remains in the soil and groundwater near the site, and that such contamination requires a response"); *United States v. Hill,* No. 95–CV–1716 (RSP/GJD), 1998 WL 278291, at *3–6 (N.D.N.Y. May 20, 1998) (granting government's motion for summary judgment on RCRA claim against operator of gas station, as leakage of petroleum into surrounding soil constitutes disposal of solid waste under RCRA); *Aurora Nat'l Bank v. Tri Star Mktg., Inc.,* 990 F.Supp. 1020, 1027 (N.D.Ill.1998) (leakage of petroleum from underground storage tanks constitutes "solid waste" within meaning of RCRA). Rather, they contend that the specific wastes at issue in this case do not pose any imminent and substantial endangerment to health or to the environment.

■ The operative word in section 6972(a)(1)(B) is "may," however, and a plaintiff "need not establish 'an incontrovertible "imminent and substantial" harm to health and the environment.' " *Orange Env't,* 860 F.Supp. at 1029 (*quoting Gache*

*v. Harrison,* 813 F.Supp. 1037, 1044 (S.D.N.Y.1993)). A finding of imminency also does not demand a demonstration that the actual harm will occur immediately. As the Supreme Court held in *Meghrig,* the language of the RCRA " 'implies that there must be a threat which is present now, although the impact of the threat may not be felt until later.' " 516 U.S. at 486, 116 S.Ct. 1251 (*quoting Price v. United States Navy,* 39 F.3d 1011, 1019 (9th Cir.1994)).

■ Moreover, as the Second Circuit emphasized in *Connecticut Coastal Fishermen's Assoc. v. Remington Arms Co.,* 989 F.2d 1305 (2d Cir.1993), it is the endangerment or harm to the environment—and not further discharge of pollutants—that must be threatened for a claim to be successfully prosecuted under section 6972(a)(1)(B):

> An imminent hazard citizen suit will lie against any "past or present" RCRA offender "who has contributed to or who is contributing" to "past or present" solid waste handling practices that "may present an imminent and substantial endangerment to health or he environment." 42 U.S.C. § 6972(a)(1)(B). Therefore, under an imminent hazard citizen suit, the endangerment must be ongoing, but the conduct that created the endangerment need not be.

*Id.* at 1316. The language of this section of the RCRA is expansive, and is " 'intended to confer upon the courts the authority to grant affirmative equitable relief to the extent necessary to eliminate any risk posed by toxic wastes.' " *Dague,* 935 F.2d at 1355 (*quoting United States v. Price,* 688 F.2d 204, 213 (3d Cir.1982)). In the present case, Kara therefore need not show that the Getty station continues to leak gasoline from its underground tanks, continued to be in violation of applicable environmental regulations at the time the instant action was commenced, or is even likely to do so in the future in order to recover under section 6972(a)(1)(B)— though such a showing could well be re-

quired for Kara to prevail on any claims under 42 U.S.C § 6972(a)(1)(A) or the CWA.[1] Rather, Kara need only demonstrate that the petroleum previously spilled at the Getty station has not been satisfactorily removed, and that the petroleum that remains in the Getty station's soil and the surrounding area may pose an imminent and substantial endangerment. *See Mutual Life Ins. Co.,* 1998 WL 160820, at *3.

Though the instant action has its genesis in a series of events following a discrete spill event in April of 1997, Kara's position throughout has been that hazardous contaminants attributable to that spill continue to manifest themselves in and around its property. Petroleum products and vapors have repeatedly appeared in the basement of plaintiff's building, requiring the evacuation of building occupants.

In opposition to Defendants' motion, Kara has also submitted the affidavit of Elliot J. Shapiro ("Shapiro"), a licensed professional engineer. According to Shapiro, the discharge of gasoline from the Getty station has resulted in an ongoing "imminent and substantial endangerment to health or the environment." (Shapiro Aff. ¶ 8.) Shapiro bases his analysis, in part, on groundwater testing conducted at the Getty station in April and May of 1998 revealing "excessive hazardous petroleum groundwater contaminants," (Shapiro Aff. ¶ 9), and his understanding that "as of January 14, 1999 no meaningful remediation of the [Getty] site had commenced"— though it is not at all clear upon what basis this understanding concerning the status of remediation is premised. *Id.* Those tests revealed levels of benzene, tolulene, ethyl-benzene, xylenes, and MTBE far in excess of the DEC's groundwater standards and, according to Shapiro, the results could be expected to be comparable to results obtained when testing adjacent to or underneath the Colgate Learning Center.

Defendants challenge the Shapiro affidavit, offering in reply an affidavit from Steven Gustems, an environmental scientist employed by defendant Tyree. According to Gustems, the Shapiro affidavit contains a host of deficiencies, the most significant of which is Shapiro's failure to base his opinion on any recent data collected from the Kara property itself. Given that Bronx groundwater is not used for bathing or drinking, Gustems states, only aboveground air testing results could establish a present danger to human health. Nevertheless, while Defendants press that the operators of the Getty station have been making sincere efforts to remediate any pollution attributable to gasoline spillage,

---

1. In *Gwaltney,* 484 U.S. at 56–59, 108 S.Ct. 376, the Supreme Court held that the language of 33 U.S.C. § 1365(a)(1) does not confer federal jurisdiction over citizen suits for "wholly past violations," and that a plaintiff bringing suit under that provision of the CWA must therefore "allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future." *Id.* at 57, 108 S.Ct. 376. Because the language of section 1365(a)(1) is analogous to that of 42 U.S.C. § 6972(a)(1)(A), the logic of *Gwaltney* applies equally to claims brought under that portion of the RCRA. *See Gwaltney,* 484 U.S. at 57 & n. 2, 108 S.Ct. 376; *Connecticut Coastal Fishermen's Assoc.,* 989 F.2d at 1315.

    As the Second Circuit explained in *Connecticut Coastal Fishermen's Association,* a plaintiff bringing suit under the CWA:

must show that defendant's violations continued subsequent to the date the complaint was filed, or present proof from which a trier of fact could find a continuing likelihood that violations would recur.

*Id.* at 1311. As far as the CWA is concerned, the "critical time for determining whether there is an ongoing violation is when the complaint was filed." *Id.*

    Be that as it may, Defendants have not moved to dismiss Kara's CWA claims on any basis other than that the DEC's enforcement activities preclude Kara's citizen suit. Furthermore, while Defendants have moved to dismiss Kara's RCRA claim insofar as Kara has failed to establish an imminent and substantial harm to health or the environment—as is required by section 6972(a)(1)(B)—it has not contended that Kara's inability to demonstrate continuing RCRA violations at the Getty Station forecloses liability under section 6972(a)(1)(A).

nowhere do they ever claim that the cleanup is complete.

■ According to Kara, discovery has yet to even commence in this action, and "[f]urther access to information would be necessary for Kara to pursue identifying additional violations relating to the Getty station." (Kaming Aff. ¶ 19.) Shapiro has stated that greater access to information is necessary for him to draw any further conclusions about conditions at the Getty station and adjacent properties. Given the previous levels of groundwater contamination at the Getty station, as reflected in the 1998 tests, and the repeated incidents at the Colgate Learning Center involving petroleum vapors, allowing discovery to proceed in this action is appropriate in the face of the conflict in expert testimony.

Even where jurisdiction is properly exercised *ab initio* over certain environmental claims, a plaintiff's ability to prosecute such claims may at times become compromised by a defendant's post-complaint compliance efforts. Partial dismissal on the ground of mootness is not easily obtained, however, and a defendant's empty "protestations of repentance and reform" do not themselves provide grounds for dismissal. *Gwaltney,* 484 U.S. at 66–67, 108 S.Ct. 376. Given the parties' stark disagreement over the status of remediation at the Getty station and the rather thin nature of the record currently before the Court, summary judgment on Kara's RCRA claim is not warranted at this time.

### Conclusion

For the reasons set forth above, Defendants' motion is granted in part, and denied in part. However, leave is granted for Defendants to renew their motion for summary judgment concerning Plaintiff's RCRA claim within thirty (30) days of the close of discovery in this action, subject to further application by the parties.

It is so ordered.